PARKWAY BANK AND TRUST COMPANY, Trustee, *et al.*, Plaintiffs-Appellees, *v.* THE COUNTY OF LAKE, Defendant-Appellant.

Second District   No. 77-405

Opinion filed March 20, 1979.—Rehearing denied April 23, 1979.

Dennis P. Ryan, State's Attorney, of Waukegan (William J. Blumthal and Susan Marie Connor, Assistant State's Attorneys, of counsel), for appellant.

Jack M. Siegel, of Chicago, for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The County of Lake appeals from the decision of the trial court in an action for declaratory judgment wherein the trial court declared the present zoning of the subject property to be "arbitrary, unreasonable and unconstitutional insofar as it prevents the plaintiffs from developing the subject property for a limited industrial park * * *" and enjoined the enforcement of the zoning restriction as to the plaintiffs' property.

The property in question consists of approximately 149 acres in Libertyville Township in Lake County. It is irregular in shape and is bounded on the west by the Illinois Tollway (I-94), on the north by State Route 176, on the east by the Village of Lake Forest and on the south by State Route 60. As can be seen from the zoning map of Libertyville Township, the land in question is zoned residential and is surrounded by residentially zoned land, except at the north boundary, where it adjoins a light industrial area for about 200 feet. The northeastern portion of the property is bisected in a northwesterly to southeasterly direction by the Chicago, Milwaukee and St. Paul Railroad.

The land surrounding the site is zoned for estates, requiring 200,000 square feet to build on, except a small section in the northeast corner which is zoned for "suburban estates" only requiring 80,000 square feet for a single-family dwelling. The involved land is vacant except for a couple of large residences but there are other large residences within about 1000 feet to the east, Lake Forest Academy is south of the property

and Forest Haven Subdivison is located immediately across the tollroad to the west. While the property at issue has remained largely vacant for sometime under its present zoning, the general neighborhood as it has been developed to date has been almost exclusively oriented toward residential use. The plaintiffs contend the present zoning—requiring mostly 5-acre lots with only a limited number of 2-acre lots available—discourages further development of the land for residential purposes.

The land in question is owned either outright or through contract of sale by Terracom Development Group, which acquired it for development to light industrial purposes. They petitioned for a change in zoning and submitted plans to the County Board of Zoning Appeals, which body recommended unanimously that the petition be denied. The County Board of Supervisors subsequently ratified this decision.

On August 11, 1976, the plaintiffs filed suit in declaratory judgment asking the circuit court to declare the present zoning unconstitutional and void so far as the involved property is concerned and praying for an injunction to restrain the County of Lake from endeavoring to enforce the existing zoning restrictions. The plaintiffs submitted evidence through its expert witnesses that the value of the subject land under the present zoning was about $5000 per acre, whereas its value if used for limited industrial site would be about $12,000 per acre.

Several witnesses testified for the plaintiffs that the land in question was not properly zoned at present and that the present "estate" zoning resulted in it merely lying vacant and that the highest and best use of the land was as a site for light or limited industry. The plaintiffs thus contend that the presumptive validity attaching to a municipal zoning ordinance has been overcome because the present zoning restrictions on the involved land are not contributing to the health, safety, convenience or general welfare of the public while at the same time such restrictions cause an economic loss to the plaintiffs. Moreover, they say the present zoning is unrealistic because the expense of improving the residential lots with water, sewer and electrical power would be more than the value of the finished homes to be erected thereon would justify. Gerald Estes, the plaintiffs' expert, testified these costs would amount to approximately $80,000 per lot. There was also testimony to the effect that the soil of a major part of the property is not suitable for individual well and septic installations and would require central water and sewer system. (They concede, however, that the water supply problem could be solved by using a central supply source nearby.)

In addition, the plaintiffs contend, the tollroad running along the western boundary of the involved land and the railroad cutting through the northeastern portion of it are negative environmental factors from a

residential standpoint, whereas they are positive advantages for purposes of light industry, further demonstrating the unwisdom of the present zoning.

The trial court found the highest and best use of the land was for a limited or light industrial park, and that the present zoning was unconstitutional and granted the prayer for an injunction restraining its application to the plaintiffs' property.

In this appeal the county contends the validity of the zoning ordinance as applied to the plaintiffs' property was not overcome by clear and convincing evidence. The county points out that its zoning ordinance is clothed with a presumption of validity and will be upheld if it is found to sustain any reasonable relation to the public health, safety, convenience or welfare.

The county contends the proposed use would cause depreciation of existing residential property, create drainage problems and necessitate substantial financial outlays for road widening and improvement in the vicinity. Moreover, it would be at odds with the overall, long-range comprehensive plan of the county which has designated the particular land in question for nonintensive use, rather than the intensive use desired by the plaintiffs. Such long-range planning, the county contends, promotes the best overall use of the available land and should not be disrupted. The county also contends the proposed light industrial use is not needed and points to the area so zoned, immediately adjacent to the subject property, which is vacant and which was offered for sale to the plaintiffs and refused because the price was higher than the plaintiffs wished to pay.

The plaintiffs say that zoning laws are a restriction on the normal right of a person to do as he sees fit with the land he owns and such restrictions are valid only to the extent the public is benefited thereby; where the public health, safety, convenience and welfare are not served thereby the restriction cannot be justified. And where, such as the plaintiffs suggest here, the zoning ordinance merely hinders the individual owner without advantage to the public, the ordinance should not be enforced. This, of course, is in line with many zoning decisions. See *County of Lake v. MacNeal* (1962), 24 Ill. 2d 253; *La Salle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944.

■■ On the other hand, the burden is on the one attacking the ordinance to show that it bears no substantial relation to the public good. (*Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172; *Village of Cahokia v. Wright* (1974), 57 Ill. 2d 166, and cases cited therein.) Thus it is not sufficient for the plaintiff to show that he will be financially better off if the zoning restriction is removed. He must also show that the financial disadvantage to him is not justified by any compensating advantage to the public

interest arising out of the enforcement of the ordinance or, at least, that the advantage to the public interest derived from the restriction is slight, whereas the injury to the plaintiff is substantial.

We may inquire then to begin with as to the plaintiffs' loss due to the restriction. It does not appear to us to be a persuasive element in this case. The plaintiff, Terracom, is a large real estate development corporation, sophisticated in its knowledge of land use, zoning considerations and land prices in various categories. Terracom bought the land in question with full knowledge of the existing zoning and paid residential prices for it, hoping to be able to override the residential zoning. Properly zoned land was adjacent nearby but, Terracom's president testified, the price was much higher. Thus, it would seem fair to observe in this case as the court did in *Cities Service Oil Co. v. County of Lake* (1962), 26 Ill. 2d 176, 181:

> "There is no dispute as to the fact that the value of the plaintiff's land for business purposes is substantially in excess of the value of the land for any other purpose, but any financial disadvantage that may result to the plaintiff from a denial of his petition is a self-created one."

The plaintiffs' disadvantage, being "self-created," cannot be regarded as a very important consideration in this case. On this point, see also *Lapkus Builders, Inc. v. City of Chicago* (1964), 30 Ill. 2d 304, 310, where the court said:

> "Purchasers who acquire property with the expectation of using it for a purpose not permissible under current zoning restrictions should not expect loss resulting from denial of the proposed use to be a persuasive argument in securing the change."

Moreover, while the plaintiffs speak of "substantial loss in value" of the land, there is not, of course, any "loss" in the value of the land—the loss is in the hoped for profit. There is no reason to suppose the plaintiffs cannot resell the land if the zoning is not granted at residential market prices and recoup the outlay for any land they have actually paid for.

This, of course, is not decisive as to the plaintiffs' case for it has been held that a zoning restriction is not valid, irrespective of the question of financial loss arising therefrom, if it bears no reasonable relation to the health, safety, convenience or welfare of the public. (*Weitling v. County of Du Page* (1962), 26 Ill. 2d 196.) While we may suppose that a greater and more concrete advantage to the public may be required to uphold a zoning restriction where the petitioner is truly an innocent victim than where he took a calculated risk in acquiring the property in the hope of realizing a profit if it was rezoned, there must, in any event, be some reasonable relationship to the public interest to sustain the ordinance. However, it is not the county's burden to establish this relationship. As was pointed out in *Tomasek v. City of Des Plaines*, the *challenging party*

must establish by "clear and convincing evidence" (64 Ill. 2d 172, 180) the absence of a reasonable relationship between the ordinance and the public health, safety, convenience or welfare.

Bearing in mind the complexities of county zoning in a heterogeneous community such as Lake County, with a mixture of agricultural, business and recreational activities, it is obvious that "spot" zoning would be ineffective, if not disastrous. It is not surprising, therefore, that the County of Lake has attempted to coordinate the disparate needs, problems and resources of the different regions of the county by setting up a comprehensive plan of land use which takes an overall view of county lands and its use. The county's comprehensive plan is, of course, not sacrosanct and is certainly subject to correction or amendment by judicial decree where necessary to redress a substantial injustice. But it is initially entitled to a certain amount of respect. We note that the Lake County Zoning Ordinance in its "Article One—Purposes" states as one of these purposes:

"To promote the orderly development of the unincorporated portion of Lake County in accordance with the Official Lake County Land Use Plan [the comprehensive plan] * * *."

Thus, the zoning ordinance and the overall land use plan are tied in with each other and to a certain extent a more long range view can be taken of local zoning problems and effects under the comprehensive plan than would be the case were the zoning more haphazard.

It is logical to consider, then, that there is an overall long range aspect of public interest where the integrity of a unified land use plan is involved. Otherwise such plans would be frustrated for it is impossible to foresee and avoid an occasional infringement of a restriction on some special interest which is suddenly and deliberately created in some small area of a particular zone. The private interest interfered with should, we think, be substantial to overcome this consideration and if it is overcome it should be on the ground that the private interest suffers much more by enforcement of the restriction than the public loses by not enforcing it. In the case before us we see no substantial injustice to the petitioners, who, as we have said—and several cases have decided—created their own problem by purchasing the land knowing it was subject to the restriction.

■■ It is not necessary to be so general and abstract in this case. It appears from the testimony that there are several aspects of the requested zoning change which are of substantial public concern, besides the general consideration of its effect on the overall land use plan, that is, its repudiation of the concept of using some land less intensely than other land. First, the county contends the proposed use would radically alter the character of the neighborhood of the subject land, which is almost entirely residential. An expert witness testified for the county that the

effect of the proposed use, involving eventually about 1.8 million square feet of industrial buildings, would severely denigrate values of the nearby residential properties and would be incongruous with a residential area. While this testimony was disputed by the plaintiffs' witnesses, it hardly seems open to question that the effect would be harmful, rather than beneficial, on the surrounding residential property values. This is a matter of public concern and it was held in *Elmhurst National Bank v. City of Chicago* (1961), 22 Ill. 2d 396, that even where the highest and best use of the land is found to be for commercial use that does not establish that a residential zoning is arbitrary or confiscatory where its removal would adversely affect surrounding residential values.

There was considerable testimony on both sides indicating the soil was ill drained and unsuitable in places for commercial building, large areas being covered with marsh grass and cattails. It was the opinion of the Regional County Planner that much of the soil was not suitable for such intensive use as a light industrial park and would increase drainage problems which might be avoided by less intensive use of the land, which might allow more choice in avoiding the wet areas.

There was a great deal of testimony about the effect of the proposed use on existing roads and traffic patterns. The plaintiffs admitted the use of the subject land for a light industrial park would create a traffic flow beyond the traffic capacity of the present access road and would necessitate widening and improving that road (Bradley Road). It would also, by increasing the traffic, increase the hazard of accidents. Norman Wolf, traffic engineer in the Lake County Highway Department, testified that Bradley Road, main access road to the site, would have to be improved and widened to handle an estimated 50% increase in traffic. The plaintiffs' expert conceded that Bradley Road would have to be improved to handle the contemplated traffic, and he also agreed that the proposed use would eventually entail further road development for sound planning.

Thus we have a possible drainage problem—which might or might not be solved by a suggested retention basin; there is a logical possibility of an adverse effect on the surrounding residential properties and there is an admitted problem of road congestion and traffic control, which will require further road construction to alleviate. While the decree provides that the plaintiffs will pay the "proportionate" cost "of the improvement of Bradley Road as it serves the subject property, at such time as the use of the subject property necessitates the improvement of said Bradley Road," it is clear that the county will have to answer the public's needs and provide the necessary improvement first and then establish its right to some contribution from the plaintiffs—a cumbersome and costly recourse for the county. Moreover, the increased traffic, creating safety and pollution problems, may be very undesirable in a county whose citizens,

according to the survey conducted by the Lake County Regional Planning Commission, indicated that the quality of the environment was their first concern, among the county's many problems.

While the findings of the trial court are entitled to the utmost respect in a zoning case and will not be lightly disturbed, our ultimate guide is the principles set forth in zoning decisions by our supreme court. In recent pronouncements by the supreme court—*Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, and *La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, the court has made it plain that zoning ordinances are not to be held invalid if the restriction can reasonably be related to the public benefit. In *Tomasek*, the court said:

> "It is clear from many holdings of this court that a zoning ordinance will be upheld if it bears any substantial relationship to the public health, safety, comfort or welfare. An ordinance will be presumed to be valid, and the one attacking an ordinance bears the burden of demonstrating its invalidity. The challenging party must establish by clear and convincing evidence that the ordinance, as applied, is arbitrary and unreasonable and bears no substantial relation to the public health, safety or welfare. (*County of Cook v. Priester*, 62 Ill. 2d 357, 367-68; *Duggan v. County of Cook*, 60 Ill. 2d 107, 110-11; *Grobman v. City of Des Plaines*, 59 Ill. 2d 588, 592.) The foundation for this judicial posture was described in *La Salle National Bank v. City of Evanston*, 57 Ill. 2d 415, 428:
>
>> 'These rules are based upon a recognition that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. (*People ex rel. Joseph Lumber Co. v. City of Chicago*, 402 Ill. 321; *Morgan v. City of Chicago*, 370 Ill. 347.) Where it appears, from all the facts, that room exists for a difference of opinion concerning the reasonableness of a classification, the legislative judgment must be conclusive. (*Krom v. City of Elmhurst*, 8 Ill. 2d 104.)' See also *Grobman v. City of Des Plaines*, 59 Ill. 2d 588, 593." 64 Ill. 2d 172, 179-80.

■■ On the basis of the record before us we cannot say that the zoning restriction does not bear any reasonable relationship to the public health, safety, convenience or welfare. Both general considerations of policy, as developed by the county's comprehensive plan for various intensities of land use, considerations of environment and considerations as to the specific problems of drainage, protection of existing property values and increased road expenditures which might reasonably be expected to

result from the proposed use, clearly establish that the restriction in question bears a reasonable relationship to the public health, safety, convenience and welfare. Nor is any injustice done to the plaintiffs by upholding the ordinance, since they clearly accepted that possibility as a business risk when the property was acquired, and there is no reason to suppose the outlay cannot be recouped, if they so wish.

Bearing in mind the principles set forth above, we see no justification for enjoining enforcement of the zoning restriction in question. The judgment of the circuit court of Lake County is reversed.

Judgment reversed.

GUILD, P. J., and LINDBERG, J., concur.