FLORIAN CLEYS, JR., Plaintiff-Appellee, *v.* THE VILLAGE OF PALATINE, Defendant-Appellant.

First District (5th Division)    No. 79-1554

Opinion filed October 10, 1980.—Rehearing denied November 12, 1980.

631

Bradley M. Glass, G. Kent Yowell, and Everette M. Hill, Jr., all of Northbrook (Littlejohn, Glass & Yowell, Ltd., of counsel), for appellant.

Schain & Burney, of Chicago (Jerome S. Schain, Thomas R. Burney, Robert C. Kenny, and Daniel H. Brown, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant appeals from an order of the trial court which granted plaintiff the use of 35 feet of a buffer zone in contravention of defendant's zoning ordinance, enjoined defendant from enforcing the provisions of the ordinance, and provided for certain other relief. Defendant contends that (1) plaintiff failed to prove by clear and convincing evidence that the ordinance was invalid; (2) the trial court's finding was against the manifest weight of the evidence; (3) the trial court's conclusion that the ordinance as applied to plaintiff's property constituted a taking of property without due process was erroneous.

Plaintiff is the owner of a piece of property located in Palatine and commonly known as 734 South Vermont Street. According to Palatine's zoning ordinance, plaintiff's property is in a manufacturing zoning district (M zone). The north and south boundaries of the lot are approximately 343 feet in length and adjoin other M zone properties. The east and west boundaries are each about 120 feet long. The east fronts on Vermont Street and also faces M zone property. The west boundary faces California Street, which is about 40 feet in width, and has been dedicated but is unimproved. California Street separates the M zones on its east from the residential land on its west. Most of the land to the west is unincorporated but is indicated in the Village Comprehensive Land Use Plan (the Plan) as and is used for residential use. The remaining land to the west is in Palatine and is zoned R 1 single-family dwelling. Currently, there is no single-family residence closer than 250 feet from plaintiff's lot.

The zoning ordinance includes the following provision:
"7.01      General Conditions.

The uses of premises in a Manufacturing District shall be subject to the following regulations: * * *

(4) Where an M District adjoins land (hereinafter referred to as 'residential land'):

(a) Within the Village limits zoned as residence district by this ordinance, or * * *

(c) Which is unincorporated and for which the Village Comprehensive Land Use Plan indicates residential land use

that portion of the M District lying within 200 feet of such residential land shall not be devoted to any use unless a fifty foot wide landscaped planting strip has been installed in the M District

along any boundary in common with residential land. Such planting strip shall contain no building, structure, parking lot, street or use other than a planting strip, and shall be installed in accordance with plans prepared by a landscape architect and approved by the Village Board * * *."

When plaintiff acquired the subject property, an office building was located near the front of the lot toward Vermont Street. In 1973, defendant issued a building permit to plaintiff for the construction of an office warehouse with dock loading facilities. The new building extended to approximately 74 feet from the western lot line, leaving about 24 feet between the loading docks and the planting strip.

In 1977, plaintiff received a notice of violation of the foregoing zoning provision and applied for a variance to permit him to use a portion of the planting strip for the ingress and egress of trucks used in his business. The Palatine Village Board denied plaintiff's request, and he brought this action.

Plaintiff alleged that the strict interpretation of the zoning ordinance caused him difficulty and hardship since he was unable to provide semitrailers with sufficient maneuvering space to permit access to his loading docks and that the subject property could not yield a reasonable return. He further alleged that the ordinance as applied to his property was unconstitutional in several respects and deprived him of his property without due process of law. Plaintiff sought a declaratory judgment giving him the right to use a portion of the planting strip necessary to maneuver trucks, an injunction preventing enforcement of the ordinance, and a decree that the zoning as applied to his property was unconstitutional and void.

The following additional pertinent testimony was adduced at trial. Plaintiff testified that he used part of the planting strip for ingress and egress of trucks used in his electrical contracting business. He estimated that there was five feet between the rear of his building line and the planting strip and that he needed about 40 feet of the planting strip to allow the various trucks use of the loading docks. He stated that if the ordinance were strictly enforced, the trucks would be unable to use the docks. His alternative would be to remove 50 feet of the building and build new docks at a cost of $75,000 to $100,000 and a loss of about 20 percent of his warehouse space.

Plaintiff attempted to introduce affidavits of two neighboring landowners in which they stated that plaintiff's activities over the past three years had not disturbed their enjoyment of their property or caused any air pollution. The affidavits were refused by the trial court on hearsay grounds.

Plaintiff introduced photographs of a partially exposed storage tank

located in the planting strip about six or seven lots north of plaintiff's lot. Plaintiff also testified that he knew that the planting strip had appeared on site plans prepared for the new addition to his building.

James Considine, the village planner, testified that a buffer strip is an area between two different types of land uses, used to screen an intensive use from a less intensive use. They are commonly used between industrial and residential areas and consist of either open space, a landscaped area, a fence, or some type of hedge. It was more common to screen a manufacturing area from a residential area by means of landscaping or simply open space. In his opinion a 50-foot planting strip between a manufacturing district and a residential district is reasonable, and if landscaping were not required, more than 50 feet would be necessary. Considine testified that the land to the west of plaintiff's is zoned residential and that the 50-foot landscaping requirement is reasonable since the manufacturing land could produce noise or air pollution which would necessitate the buffer zone to protect the residential area.

On cross-examination Considine testified that a vacant lot adjoins plaintiff's property to the west and that the future residents of that property may be affected by noise and air pollution from plaintiff's use of the buffer zone. He knew of no complaints about plaintiff's activities from the church or the residents of a house, both of which were near plaintiff's property. Considine identified the picture of the exposed tank as depicting a violation of the planting strip and also stated that the village had granted two variances from the planting strip requirement within 500 feet of plaintiff's property. He later informed the court that these properties adjoined property which was zoned residential but was planned to be manufacturing.

Considine described California Street as a dedicated but unimproved 40-foot-wide street which is overgrown with trees and separates plaintiff's property from that on the west. Because of the overgrowth of trees there is little visibility between the properties. He testified that if plaintiff were allowed to use 40 feet of the buffer zone as requested there would be no appreciable effect on the adjoining lots insofar as their present use is concerned. He also stated that if the street were counted with plaintiff's remaining property, 50 feet would separate plaintiff's lot from the adjoining lot.

The trial judge concluded that the strict enforcement of Palatine's zoning ordinance would cause plaintiff practical difficulty and particular hardship because plaintiff's warehouse facility depends upon loading docks and access thereto and because plaintiff would be unable to provide semi-trailers with sufficient maneuvering space to permit access to his loading docks. The trial judge concluded that the ordinance as applied to the subject property "insofar as it prevents the use of the front

thirty-five (35) feet of the buffer zone for truck ingress and egress, is unreasonable, arbitrary, confiscatory, unconstitutional and void, and bears no reasonable relationship to the public health, safety, morals and general welfare." He further concluded that the ordinance as it applies to the subject property "insofar as it prevents the use of the front thirty-five feet of the buffer zone for truck ingress and egress, is destructive of and irreparably damages the value of the property and constitutes a taking of Plaintiff's property without due process of law in contravention of Sec. 2, Art. I, of the Constitution of the State of Illinois and the Fourteenth Amendment of the Constitution of the United States."

The trial judge declared that plaintiff was entitled to use the front 35 feet for truck ingress and egress, enjoined Palatine and its officials from enforcing the provisions of the zoning ordinance insofar as that ordinance prevents the use of the subject property as aforesaid, ordered plaintiff to landscape the rear 15 feet of the buffer zone and maintain a green planting strip on the same, and retained jurisdiction for the purpose of enforcing the terms of the order. Defendant appeals from that order.

OPINION

I.

■■ In his appellee's brief, plaintiff raises two additional contentions for review. Plaintiff did not cross-appeal in this case. In such a situation, he is entitled to sustain the judgment on review by any issue not previously ruled upon by the trial court if the necessary factual basis for the determination of that point is contained in the record (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417, 420; *Village of Arlington Heights v. National Bank* (1977), 53 Ill. App. 3d 917, 920, 369 N.E.2d 502, 504-05), but where a general decision for the appellee contains a specific finding unfavorable to him and he fails to file a cross-appeal, the adverse finding is not properly before the reviewing court. (*City of Wilmington v. Industrial Com.* (1972), 52 Ill. 2d 587, 591, 289 N.E.2d 418, 421; *Village of Arlington Heights v. National Bank* (1977), 53 Ill. App. 3d 917, 920, 369 N.E.2d 502, 504-05.) In the latter situation, a court of review is confined to the issues raised by appellant and will not consider those urged by appellee except where they are related to appellant's issues. (*Bean v. Norfolk & Western Ry. Co.* (1980), 84 Ill. App. 3d 395, 400, 405 N.E.2d 418, 423; *National Football League Properties, Inc. v. Dallas Cap & Emblem Manufacturing, Inc.* (1975), 26 Ill. App. 3d 820, 821, 327 N.E.2d 247, 248.) With these principles in mind, we examine plaintiff's contentions.

■■ Plaintiff's first contention is that the section of the zoning ordinance in question is inapplicable to his property because the section requires that M district land "adjoins" residential land and since his land is

separated from residential land by California Street, a dedicated but unimproved street, the factual prerequisite for application of the zoning law does not exist. In the final judgment order the trial court specifically found that "To the west the subject property adjoins residentially zoned property." Plaintiff never raised the issue in the trial court and did not question the court's finding by way of a cross-appeal. Based on the foregoing authorities, it is clear that the finding is not properly before us and we cannot consider this issue.

Plaintiff's second contention is that the trial court erred in excluding the affidavits of the two neighboring landowners since they were admissible as declarations against interest. Once again, plaintiff does not seek to sustain the trial court's ruling but attempts to reverse an adverse ruling of the trial court without a proper cross-appeal. This contention is not properly before us on review, and we therefore do not consider it.

## II.

Turning to the merits of the appeal, defendant contends that the trial judge did not correctly accord the zoning ordinance its presumption of validity or require plaintiff to prove its invalidity by clear and convincing evidence but merely balanced the equities by weighing the benefit to the people of Palatine with the hardship to plaintiff. Defendant contends that the trial court merely substituted its judgment for that of the legislature in ruling for plaintiff.

The law applicable to zoning cases is well established. It was succinctly set forth in *La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 307-08, 388 N.E.2d 388, 390-91, as follows:

"Because zoning is mainly a legislative function [citation], it is primarily within the province of the local municipal body to determine the uses of property and to establish zoning classifications [citations]. As this Court has previously asserted:

'It is clear from many holdings of this court that a zoning ordinance will be upheld if it bears any substantial relationship to the public health, safety, comfort or welfare. An ordinance will be presumed to be valid, and the one attacking an ordinance bears the burden of demonstrating its invalidity. The challenging party must establish by clear and convincing evidence that the ordinance, as applied, is arbitrary and unreasonable and bears no substantial relation to the public health, safety or welfare. [Citations.]' "

The following facts may be taken into consideration in determining the validity of a zoning decision: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruc-

tion of property values of plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. *La Salle National Bank v. Cook County* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65, 69; *La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428-29, 312 N.E.2d 625, 632; see *La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 308, 388 N.E.2d 388, 391.

We now analyze the evidence presented at trial in light of the foregoing factors.

■■ (1) Plaintiff's property is zoned in conformity with other property and existing uses on its north, south and east boundaries. The planting strip is consistently maintained on the west boundaries of the lots to the north and south, except for the exposed tank six or seven lots north of plaintiff's property. However, this one violation should not be used to allow plaintiff to erode the effect of the overall ordinance. As defendant points out, there was no evidence that this violation would not be prosecuted and from the photograph introduced at trial, it is reasonable to assume that the situation would be corrected. In addition, the two variances granted to owners within 500 feet of plaintiff are explained by the fact that the land they adjoined, although zoned residential, was intended as manufacturing. These three instances should not be used to defeat the ordinance. As stated in *Zenith Radio Corp. v. Village of Mt. Prospect* (1973), 15 Ill. App. 3d 587, 593, 304 N.E.2d 754, 759:

> " 'The fact that non-permissive uses are carried on by others contrary to the ordinance neither fortifies not weakens the case of appellants, but each alleged violation of the ordinance is a complete case within itself and must stand or fall upon the facts and circumstances of that case alone.
>
> ❋ ❋ ❋
>
> In our opinion neither the several legal non-conforming uses nor the illegal conversion should be used as a wedge by plaintiff for declaring defendant's present R-2 zoning ordinance arbitrary and void.' "

(2) There was no evidence presented as to the extent that plaintiff's property was diminished by the zoning restriction. Presumably, the value of his land would not be lessened at all since similar land would carry the same restriction and plaintiff's land would not be arbitrarily reduced in value.

(3) There was no evidence of destruction of plaintiff's property value presented at trial, but the parties differ as to whether any evidence

showed that the planting strip bore a reasonable relationship to the health and general welfare of the public. Defendant asserts that its expert testified that the planting strip was necessary to protect future residents from air and noise pollution and that a 50-foot width was reasonable. Plaintiff contends that the evidence presented showed that his use of the property produced no air or noise pollution, that continued use of the 40-foot strip would have no appreciable effect on adjoining lots, and that future pollution was purely theoretical. In addition, plaintiff argues that the overgrowth on California Street and the remainder of his lot form an adequate planting strip to protect the public health. He therefore asserts that he has overcome the presumption of validity of the zoning ordinance since he has shown that it bears no reasonable relationship to the public health, safety or welfare.

Defendant concedes that there are no residents to the west of plaintiff who now require protection from pollution but contends that the strip is needed for the residential areas planned to be next to plaintiff's land. As was recognized in *Parkway Bank & Trust Co. v. County of Lake* (1979), 71 Ill. App. 3d 421, 426, 389 N.E.2d 882, 886, a zoning ordinance and a land-use plan are coordinated to take into consideration the future needs of an area and to provide for them. A land-use plan assures the orderly development of an unincorporated area and must be geared to the future to regulate and channel growth consistent with existing zoning.

"It is logical to consider, then, that there is an overall long range aspect of public interest where the integrity of a unified land use plan is involved. Otherwise such plans would be frustrated for it is impossible to foresee and avoid an occasional infringement of a restriction on some special interest which is suddenly and deliberately created in some small area of a particular zone. The private interest interfered with should, we think, be substantial to overcome this consideration and if it is overcome it should be on the ground that the private interest suffers much more by enforcement of the restriction than the public loses by not enforcing it." 71 Ill. App. 3d 421, 426.

■■ The fact that there are no residents who have complained of plaintiff's activities is not decisive since the nearest neighbor is over 200 feet away. They should not be able to waive the rights of future adjoining land-owners who are protected by the plan. In addition, while an adequate buffer may presently exist, if California Street is improved in the future, only a 15-foot strip would remain to screen the residential area from the manufacturing area, which would presumably be an inadequate buffer. Plaintiff has failed to show that the ordinance as applied to his property does not bear a reasonable relation to the public health and welfare.

(4) The relative gain to the public balanced against the hardship to

plaintiff is a somewhat equally balanced issue in this case. The gain to the public is somewhat speculative at present since there are no neighbors who would be immediately affected by the variance. As already discussed, at some future time there will be a concrete benefit to the public health and welfare as the area immediately west of plaintiff is developed. In addition, as defendant maintains, the integrity of the ordinance is a public benefit which would be jeopardized by nonenforcement of the ordinance in this case.

There is without a doubt a hardship to plaintiff in that enforcement will prevent use of the existing docks and require modification of the building at a cost of $75,000 to $100,000 and a loss of 20 percent of the rental space. He argues that since he demonstrated that the public welfare does not require strict enforcement of the ordinance, it is unnecessary for him to suffer the substantial hardship involved.

■■ As already established, it must be presumed that the zoning ordinance is valid and bears a substantial relation to the public health and safety. The hardship suffered here should not be regarded as a very important consideration since it was "self-created." (*Parkway Bank & Trust Co. v. County of Lake* (1979), 71 Ill. App. 3d 421, 425, 389 N.E.2d 882, 885; see *Grobman v. City of Des Plaines* (1975), 59 Ill. 2d 588, 596, 322 N.E.2d 443, 447.) Plaintiff bought the property subject to the zoning restrictions and later built the addition with the docks. By his own admission, he was aware that the site plans drawn for the proposed addition included the 50-foot planting strip. He would also have known of his requirements for the loading docks but left only 24 feet of maneuvering space between the docks and the buffer zone. Because plaintiff built himself into his present problem, any hardship suffered cannot be regarded as important enough to outweigh the public gain.

■■ (5) The evidence presented at trial did not show that plaintiff's property was not suited for the purpose for which it was zoned. Plaintiff offered no evidence that the property was better suited for other activity nor does he seek to use the property for any use other than that for which it was zoned. An aerial photograph shows that the area around plaintiff's property is being used for manufacturing purposes in conformity with the planting strip requirement. Since there was no evidence presented at trial to show that the property was not properly zoned, the ordinance must be upheld and plaintiff required to comply.

(6) The fact that plaintiff's land and other lots near his have been developed under the ordinance demonstrates that it does not unreasonably restrict the uses for the property or retard its development. This factor also favors upholding the ordinance.

■■ Considering all of the factors together, we find that plaintiff failed to show by clear and convincing evidence that defendant's zoning ordinance

as applied to his property was arbitrary and unreasonable and bore no substantial relation to the public health, safety or welfare. Accordingly, the trial court erred in concluding that the pertinent section of the zoning ordinance as applied to the use of the front 35 feet of the buffer zone on plaintiff's land was (a) unreasonable, arbitrary, confiscatory, unconstitutional and void, bears no reasonable relationship to the public health, welfare, safety, morals and general welfare; and (b) destructive of the value of the property and constituted an unconstitutional taking of plaintiff's property. Therefore, the judgment of the trial court is reversed and judgment is here entered for defendant and against plaintiff.

Reversed; judgment for defendant.

SULLIVAN, P. J., and WILSON, J., concur.