ANTHONY ALFIERI, Plaintiff-Appellant, v. CSX CORPORATION *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—89—1749

Opinion filed July 18, 1990.

Crystal & Heytow, of Chicago, for appellant.

Gorham, Metge, Bowman & Hourigan, of Chicago, for appellees.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

Pursuant to the Railway Labor Act (RLA) (45 U.S.C. §§151 to 163 (1982)) and a collective bargaining agreement, plaintiff Anthony Alfieri arbitrated a grievance complaining of his dismissal from employment with a railroad. He appeals from the denial of his section 2—1401 petition (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) which sought to vacate the dismissal of his retaliatory discharge complaint. The issues on appeal are (1) whether the holding in *Lingle v. Norge Division of Magic Chef, Inc.* (1988), 486 U.S. 399, 100 L. Ed. 2d 410, 108 S. Ct. 1877, that the Labor-Management Relations Act of 1947 (LMRA) (29 U.S.C. §§141 to 197 (1988)) did not preempt a tort claim if it did not require interpretation of the collective bargaining agreement applies to RLA preemption analysis; and (2) whether plaintiff's action was barred because an arbitrator reinstated him to his employment.

According to a written decision by a referee of the National Adjustment Review Board (the Adjustment Board), plaintiff's union claimed that there was insufficient evidence that plaintiff was dismissed because of insubordination, that plaintiff was dismissed because of harassment, that plaintiff's employer, Chesapeake & Ohio Railway Company, violated a rule requiring charges to be sufficiently stated, and that plaintiff had been denied due process. The referee found that plaintiff had unjustifiably failed to perform his duties, that dismissal was an unreasonably severe punishment for insubordinate conduct, and that plaintiff should be reinstated without back pay. A transcript of the hearing on plaintiff's dismissal is not in the record.

Plaintiff alleged in his circuit court complaint, filed after the referee's decision, that he reported theft by other employees for which he was discharged in retaliation by defendants CSX Corporation, Baltimore & Ohio Railroad Company, Baltimore & Ohio Chicago Terminal Railroad Company, and Chesapeake & Ohio Railway Company. Plaintiff also alleged that the individual defendants whom he accused of theft, Ronald L. Hildebrand and Joseph P. McMahon, tortiously interfered with his existing, and future expectation of a continued, business relationship with the railroad defendants.

Defendants moved to dismiss the complaint pursuant to sections

2—619(1) and (9) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, pars. 2—619(1), (9)) on the basis that plaintiff's claim for retaliatory discharge was in the exclusive jurisdiction of the Adjustment Board to which he had submitted his grievance. Defendants also argued that the RLA preempted the cause of action. Relying upon *Lingle v. Norge Division of Magic Chef, Inc.* (7th Cir. 1987), 823 F.2d 1031, the trial court granted the motion to dismiss on the basis that the RLA preempted plaintiff's action, and plaintiff's complaint was dismissed with prejudice. An appeal from *Lingle* to the United States Supreme Court was pending at the time of the ruling.

About nine months later, plaintiff filed a petition for relief from the dismissal pursuant to section 2—1401 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) in which he argued that after the dismissal, the United States Supreme Court reversed *Lingle* and held that a State-law tort claim for retaliatory discharge was not preempted by the LMRA if resolution of plaintiff's claim did not turn on the meaning of terms of the collective bargaining agreement. Plaintiff argued that *Ryherd v. General Cable Co.* (1988), 124 Ill. 2d 418, 530 N.E.2d 431, interpreted *Lingle* as holding that an employee covered by a collective bargaining agreement which provided a contractual remedy for discharge without just cause could nevertheless enforce his State-law retaliatory discharge action. Plaintiff argued that there was no difference between the LMRA and the RLA that prevented the *Lingle* test from being applied to the RLA and that his claim satisfied the test because it was not dependent on the interpretation of any of the terms of the collective bargaining agreement.

Supporting plaintiff's petition was an affidavit in which he swore that he was precluded from introducing at the hearing before the Adjustment Board any evidence "relating to the issues presented in the subject cause of action."

At the hearing on plaintiff's petition, the trial court stated that its original ruling was incorrect because of *Lingle*'s reversal. But the trial court denied plaintiff's petition on the new bases that plaintiff's discharge amounted to a suspension because he was reinstated to his job and the issue of back pay had already been litigated.

Plaintiff argues on appeal that his cause of action for retaliatory discharge was not precluded by the arbitration of his grievance. Although the trial court did not deny plaintiff's petition because of preemption, and although it found its previous ruling on preemption in error, defendants offer as an alternative basis for affirmance that

plaintiff's complaint was preempted by the RLA. Defendants argue that they may offer any basis upon which to affirm the result regardless of the trial court's reasoning. Plaintiff counters that because defendants did not cross-appeal from the trial court's specific finding unfavorable to them that preemption did not apply, the issue of preemption is not properly before the reviewing court, and plaintiff cites *Cleys v. Village of Palatine* (1980), 89 Ill. App. 3d 630, 636, 411 N.E.2d 1161, and *Village of Arlington Heights v. National Bank* (1977), 53 Ill. App. 3d 917, 920, 369 N.E.2d 502.

■ The trial court did not make a specific finding from which appellee should have appealed, but only indicated that its prior ruling that plaintiff's claim was preempted was incorrect. The basis for the court's ruling denying the petition was that the plaintiff's discharge and claim for back wages had already been litigated. The general rule permitting a judgment to be sustained upon any ground warranted regardless of whether it was relied on by the trial court is applicable here. *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9.

We will first address the preemption issue. The RLA provides in part:

> "The purposes of \*\*\* [the RLA] are: (1) To avoid any interruption to commerce or to the operation of any carrier \*\*\*; (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; [and] (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. §151A (1982).

> "(i) The *disputes between an employee* or group of employees *and a carrier* or carriers *growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions,* \*\*\* shall be handled in the usual manner \*\*\* but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board." (Emphasis added.) (45 U.S.C. §153 First (i) (1982).)

Section 301(a) of the LMRA provides:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court

of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. §185(a) (1988).

Under the RLA, "minor disputes" is the description given to "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation, generally involving only one employee," while "major disputes" are those which result when there is "disagreement in the bargaining process for a new contract." (*Brotherhood of R.R. Trainmen v. Chicago River & Indiana R.R. Co.* (1956), 353 U.S. 30, 33, 1 L. Ed. 2d 622, 625, 77 S. Ct. 635, 637.) Major and minor do not necessarily refer to significant and insignificant issues. (*International Brotherhood of Teamsters v. Southwest Airlines Co.* (5th Cir. 1989), 875 F.2d 1129, 1133.) Major disputes that are not settled "in conference" are first mediated before the National Mediation Board and then may be arbitrated. (*Elgin, Joliet & Eastern Ry. Co. v. Burley* (1945), 325 U.S. 711, 725, 89 L. Ed. 1886, 1895, 65 S. Ct. 1282, 1290; 45 U.S.C. §155 First (1982).) Minor disputes are decided by the Adjustment Board once negotiation fails. (*Elgin*, 325 U.S. at 726-27, 89 L. Ed. at 1896, 65 S. Ct. at 1291; 45 U.S.C. §153 First (i) (1982).) This grievance procedure for minor disputes is mandatory and exclusive. *Brotherhood of Locomotive Engineers v. Louisville & Nashville R.R. Co.* (1963), 373 U.S. 33, 38, 10 L. Ed. 2d 172, 176, 83 S. Ct. 1059, 1062.

It has been held that contract claims for wrongful discharge are subject to the RLA requirement that disputes be submitted to the Board. In *Andrews v. Louisville & Nashville R.R. Co.* (1972), 406 U.S. 320, 32 L. Ed. 2d 95, 92 S. Ct. 1562, plaintiff alleged that following an accident, he had fully recovered and was physically able to resume his work for the respondent, but that respondent had refused to allow him to return to work and that respondent's actions amounted to a wrongful discharge. The court stated:

"Here it is conceded by all that the only source of petitioner's right not to be discharged, and therefore to treat an alleged discharge as a 'wrongful' one that entitles him to damages, is the collective-bargaining agreement between the employer and the union. *** His claim is therefore subject to the Act's requirement that it be submitted to the Board for adjustment." (*Andrews*, 406 U.S. at 324, 32 L. Ed. 2d at 99, 92 S. Ct. at 1565.)

*Jackson v. Consolidated Rail Corp.* (7th Cir. 1983), 717 F.2d 1045, 1049, 1054, characterized retaliatory discharge as merely one type of wrongful discharge and held that plaintiff's right not to be dis-

charged at the will of his employer grew out of the collective bargaining agreement so that an action for retaliatory discharge was preempted under the RLA.

In *Koehler v. Illinois Central Gulf R.R. Co.* (1985), 109 Ill. 2d 473, 488 N.E.2d 542, upon which defendants rely, plaintiff suffered an injury and was later certified as fit to return to work. Plaintiff filed suit to recover for his injury pursuant to the act popularly known as the Federal Employers' Liability Act (FELA) (45 U.S.C. §51 to 60 (1982)). Seven years later, plaintiff was permanently disqualified from employment because of alleged degenerative changes in his right knee. Plaintiff alleged in his second FELA complaint that his permanent disqualification was in retaliation for having sued defendant under FELA. A pending grievance was resolved by the National Railroad Adjustment Board, which ordered that plaintiff be reinstated with retroactive seniority. The following issue was submitted for review in *Koehler*:

> "Whether a railroad employee covered under the provisions of the Railroad [*sic*] Labor Act, 45 U.S.C. section 151 *et seq.* may bring an action in state court against his employer for wrongful discharge without first exhausting his administrative remedies available under the Railroad [*sic*] Labor Act." *Koehler*, 109 Ill. 2d at 475.

The court held that the RLA preempts a State-law tort action alleging retaliatory discharge for having filed suit under FELA where it is brought by an employee covered by the RLA. (*Koehler*, 109 Ill. 2d at 479.) The court also stated that a State-law action for retaliatory discharge would " 'threaten undue interference with the federal regulatory scheme.' " (*Koehler*, 109 Ill. 2d at 479, quoting *Farmer v. United Brotherhood of Carpenters & Joiners of America* (1977), 430 U.S. 290, 302, 51 L. Ed. 2d 338, 351, 97 S. Ct. 1056, 1064.) The court's broad statement that "employment-based disputes" were to be resolved exclusively pursuant to the RLA indicated that all such disputes were covered whether or not they involved interpretation of collective bargaining agreements. *Koehler*, 109 Ill. 2d at 480.

Other jurisdictions have found preemption of State-law tort claims by the RLA. See, *e.g., Gonzalez v. Northwest Airlines, Inc.* (1985), 201 N.J. Super. 422, 427, 493 A.2d 547, 550 (wrongful discharge is a minor dispute subject to RLA arbitration); *Gray v. Chessie System* (D. Md. 1984), 588 F. Supp. 1334, 1337 (intentional interference with contractual relations claim is preempted under the RLA where the gravamen of the complaint was a wrongful discharge, which was a minor dispute); *Salcedo v. Norfolk & Western Ry. Co.*

(E.D. Mich. 1982), 572 F. Supp. 286, 288 (claims for intentional infliction of emotional distress and intentional interference with contractual relations are preempted by the RLA where plaintiff was only attempting to recast his wrongful discharge claim as a tort claim); *Magnuson v. Burlington Northern, Inc.* (9th Cir. 1978), 576 F.2d 1367, 1368-70 (claims of intentional infliction of emotional distress based on conspiracy are preempted under RLA where the basic injury was wrongful discharge, which was a minor dispute).

*Lingle v. Norge Division of Magic Chef, Inc.* (1988), 486 U.S. 399, 406-10, 100 L. Ed. 2d 410, 419-21, 108 S. Ct. 1880, 1881-83, held that an employee's State-law retaliatory discharge claim was not preempted by Federal law because it did not involve interpretation of the collective bargaining agreement, that LMRA preemption was to ensure only that Federal law would be the basis for interpreting collective bargaining agreements, and that State-law substantive rights that did not depend upon such interpretation were unaffected. Even if the facts addressed in arbitration pursuant to a collective bargaining agreement were the same as would be addressed in a State-law cause of action, a cause of action that could be resolved without interpreting the collective bargaining agreement is independent for LMRA preemption purposes. *Lingle*, 486 U.S. at 409-10, 100 L. Ed. 2d at 421, 108 S. Ct. at 1883.

Plaintiff argues that *Lingle* applied to the RLA so that *Koehler* is no longer good precedent. Defendants disagree on the basis that *Lingle*'s holding was restricted to the LMRA. *Ryherd v. General Cable Co.* (1988), 124 Ill. 2d 418, 426, 530 N.E.2d 431, which plaintiff cites in support of his argument that *Lingle* redefined the doctrine of preemption, held that section 301 of the LMRA did not preempt claims that were independent of the collective bargaining agreement. In *Ryherd* the appellant suffered a work-related injury and filed a workers' compensation claim. She took a medical leave of absence and was later released to go back to work. Soon thereafter she was discharged. The appellant, through her union, filed a grievance. The arbitrator concluded that the appellant was discharged because of her absenteeism record. The appellant thereafter filed a State-law tort claim for retaliatory discharge alleging she was terminated for filing a workers' compensation claim.

In *Ryherd*, the supreme court noted:

"In the relatively short time since the appellate court rendered its decision, much water has passed under the bridge. Since that decision, our court has held that claims for retaliatory discharge are not generally preempted by Federal law,

even where the employee claiming retaliatory discharge is covered by a collective-bargaining agreement, and even where the agreement both forbids discharges absent 'just cause' and provides for arbitration. (*Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, 10.)" (*Ryherd*, 124 Ill. 2d at 423-24.)

Regarding LMRA section 301 preemption, *Ryherd* stated:

"The right to recover for retaliatory discharge, however, is equally available to employees covered by a collective-bargaining agreement (*Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, *cert. denied* (1985), 474 U.S. 909, 88 L. Ed. 2d 243, 106 S. Ct. 278) and to employees at will (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134). The right is derived from Illinois Public policy. It cannot be negotiated or bargained away. (See *Gonzalez*, 115 Ill. 2d at 12.) Moreover, the specific form of the retaliatory discharge right asserted here flows directly from our Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.4(h)), and not from anything in a collective-bargaining agreement." *Ryherd*, 124 Ill. 2d at 426-27.

*Ryherd* also noted that a State court judge looks at the facts differently than an arbitrator:

"It is true that a State court judge and an arbitrator would have to answer a similar *factual* question: Why did the employer discharge the employee? But the *legal* questions are entirely different. Once the employer's motive has been determined, the State court judge looks to Illinois public policy to determine whether the discharge was tortious, while the arbitrator looks to the contract and the 'law of the shop' to determine whether the motive constitutes 'just cause'. These two different types of inquiries cannot be equated." (Emphasis in original.) *Ryherd*, 124 Ill. 2d at 428.

An argument that *Koehler* needed to be reexamined in light of *Lingle* was recently rejected in *Gendron v. Chicago & North Western Transportation Co.* (1989), 190 Ill. App. 3d 301, 304, 306, 309, 546 N.E.2d 721, which held that claims of fraudulent conveyance and civil conspiracy were preempted by the RLA. Nevertheless, the court adopted the reasoning used in *Lingle* that if interpretation of the collective bargaining agreement was required, the fraudulent conveyance claim would be preempted by the RLA. (*Gendron*, 190 Ill. App. 3d at 305.) The dissenting opinion persuasively argued that *Koehler* did not require that all State-tort claims be preempted by the RLA because the complaint in *Koehler* stemmed from a grievance. *Gen-*

*dron,* 190 Ill. App. 3d at 313-14. (O'Connor, J., dissenting).

The majority of cases from other jurisdictions have applied the *Lingle* analysis to the RLA preemption issue. The Sixth Circuit in *Beard v. Carrollton R.R.* (6th Cir. 1989), 893 F.2d 117, 122, used a test similar to *Lingle* to determine whether a tort claim was preempted by the RLA, *i.e.*, whether the claim was inextricably intertwined with the grievance machinery of the collective bargaining agreement and the RLA. The court stated that the standards under the RLA and LMRA might not be identical, but that the *Lingle* approach was instructive nevertheless and was consistent with the standards that other circuits had applied in railroad cases. *Beard,* 893 F.2d at 122. See also *McCall v. Chesapeake & Ohio Ry. Co.* (6th Cir. 1988), 844 F.2d 294, 303 (a State civil rights statute was preempted by the RLA because the action necessarily required an interpretation of the collective bargaining agreement).

In *Edelman v. Western Airlines, Inc.* (9th Cir. 1989), 892 F. 2d 839, 844, *Lingle* was cited for the statement that a claim of breach of a collective bargaining agreement was preempted under the RLA, and the court also used the inextricably intertwined test. In *Roane v. Comair, Inc.* (E.D. Ky. 1989), 708 F. Supp. 802, *Lingle* was cited in support of the court's determination that a State-law claim necessarily involved the construction of the collective bargaining agreement so that the claims were preempted by the RLA.

In *Walker v. Consolidated Rail Corp.* (1989), 178 Mich. App. 451, 457, 444 N.W.2d 199, 200-01, the court used *Lingle* in support for its determination that a discrimination claim was not preempted by the RLA where the discrimination statute at issue did not conflict with the RLA and where the claim did not require an interpretation of the collective bargaining agreement. In *International Association of Machinists & Aerospace Workers v. Allegis Corp.* (1989), 545 N.Y.S.2d 638, 642, 144 N.Y. Misc. 2d 983, 988, *Lingle* was cited in support of the holding that a fraudulent conveyance claim was not preempted by the RLA where it was unnecessary to interpret any collective bargaining agreement terms.

Only one decision has rejected the application of *Lingle* to the determination of RLA preemption. (*Stevenson v. Forte* (M.D. Tenn. March 8, 1989), No. 3—88—0046, 1989 U.S. Dist. LEXIS 7034.) Instead, the court used the test whether the claim was founded upon the employment relation.

■ The RLA provides for the exclusive jurisdiction of the Adjustment Board over grievances and over disputes growing out of interpretation of collective bargaining agreements. (45 U.S.C. §153

First (i) (1982).) Congress did not intend to make a grievance a separate basis for arbitration from disputes over the interpretation or application of the collective bargaining agreement contract; a grievance is a claim of violation of the collective bargaining agreement. (*Lancaster v. Norfolk & Western Ry. Co.* (7th Cir. 1985), 773 F.2d 807, 814.) The *Lingle* test under the LMRA whether claims require interpretation of a collective bargaining agreement is already contained in the RLA.

■■■ Plaintiff's retaliatory discharge claim does not grow out of interpretation of the collective bargaining agreement because the terms of his employment are not at issue. In an action for retaliatory discharge, the only issues are why the employee was fired and whether the reason was against public policy. (See *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134, 421 N.E.2d 876.) In an action for tortious interference with a business relationship, plaintiff must allege the existence of a valid business relationship or expectancy, defendant's knowledge of the relationship or expectancy, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resulting damage. (*Mucklow v. John Marshall Law School* (1988), 176 Ill. App. 3d 886, 895, 531 N.E.2d 941.) On this record that does not include the collective bargaining agreement which presumably governed the terms of plaintiff's employment, it cannot be determined whether plaintiff's interference with business relationship count will necessarily require interpretation of the collective bargaining agreement.

■■ We hold that the dismissal cannot be upheld on the basis that the complaint was preempted by the RLA. Our holding does not prevent the complaint from being dismissed at a later time if it becomes apparent that the complaint grows out of the interpretation of the collective bargaining agreement.

■■ Plaintiff argues that the trial court erred in dismissing his complaint because he was not precluded from pursuing his cause of action for retaliatory discharge after he arbitrated his grievance. Although the arbitrator had already ruled in favor of plaintiff, *Lingle* reversed the dismissal of plaintiff's State-law complaint enabling him to also proceed with his State-law remedies, but the Court did not specifically address the issue whether the cause of action was precluded by the prior arbitration. (*Lingle*, 486 U.S. at 402, 413, 100 L.Ed. 2d at 416, 423-24, 108 S. Ct. at 1879, 1885.) *Ryherd*, on the other hand, expressly held that an employee who arbitrated his discharge claim was not thereby precluded from filing a cause of action for retaliatory discharge because an LMRA grievance and a retalia-

tory discharge claim were different claims. (*Ryherd*, 124 Ill. 2d at 432, 434.) Similarly, plaintiff's grievance and State-tort law allegations are separate claims so that plaintiff's lawsuit was not barred by the previous arbitration.

Defendants argue for the first time on appeal that plaintiff improperly used a section 2—1401 petition to obtain relief from the dismissal. The issue is therefore waived. See *Harbor Insurance Co. v. Arthur Andersen & Co.* (1986), 149 Ill. App. 3d 235, 240, 500 N.E.2d 707.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

FREEMAN and WHITE, JJ., concur.