PAUL T. WILSON *et al.*, Plaintiffs-Appellants, *v.* THE COUNTY OF McHENRY, Defendant-Appellee.—WESLEY W. VOSS *et al.*, Plaintiffs-Appellants, *v.* THE COUNTY OF McHENRY, Defendant-Appellee.

Second District    Nos. 80-32, 80-150 cons.

Opinion filed February 2, 1981.

James A. Campion, of Joslyn & Green, P. C., of Woodstock, for appellants.

Theodore J. Floro, State's Attorney, of Woodstock (Susan Fayette, Assistant State's Attorney, of counsel), for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The issue in two appeals which we have consolidated for opinion is whether the McHenry County Zoning Ordinance establishing an agricultural zoning classification (A-1) is unconstitutional as applied to particular properties. The first appeal (No. 80-32) involves a declaratory judgment suit brought by Paul T. Wilson and Laila Wilson, his wife (Wilson) against the County of McHenry; the second appeal (No. 80-150) involves a similar action brought by Wesley W. Voss and Delphine Voss, his wife, Edward Neveu, Delores M. Neveu, his wife, and the trustees holding title to the real estate (Voss and Neveu). The trial court entered judgment in each case declaring the A-1 classification constitutional as applied to each of the properties. Each owner appeals.

The history and background of the A-1 classification is common to both appeals. The county zoning ordinance was amended on November 1, 1979, to provide a 160-acre-lot minimum in agricultural zones which were set forth pursuant to the land use plan for McHenry County characterized as the year 2000 plan. The plan was adopted by the McHenry County Board on October 4, 1979, and recited in substance that it was an attempt to channel development toward existing urban centers, particularly recognizing prime agricultural land as a primary, finite material resource to be preserved. The plan also recognized, however, that certain prime agricultural land closer to existing municipalities should be designated for residential use in order to preserve larger, rural tracts of prime agricultural soils.

## No. 80-32 — THE WILSON APPEAL

The Wilson property is a 76-acre parcel located about one-half mile north of the intersection of Greenwood Road and State Route 120 in Greenwood Township, which is currently zoned A-1 Agricultural. The Wilsons sought to rezone to an E-1 Estate classification so that their proposed one-acre residential development would be permissible. The county denied the petition, and plaintiffs sought relief in the circuit court. There was evidence at trial that when the Wilsons purchased the property it was zoned F-Farming under the McHenry County zoning ordinance then in effect, which provided for a 1⅝-acre minimum residential lot size. In 1974 the ordinance was amended, raising the minimum lot size to five acres. The present ordinance, adopted on November 1, 1979, requires residential lot sizes of not less than 160 acres in the zone designated as agricultural.

The Wilsons presented testimony that 37.4% of the subject property is not prime farmland; only 65 acres are tillable; the average yield was approximately 95 bushels of corn per acre; the farming operation has always lost money; and the property is not an economic farming unit. Testimony was further adduced by the plaintiffs that the highest and best use of the property is for a residential development and that such development would substantially increase the value of the property. Finally, there was evidence that a number of rural residential subdivisions are located in the surrounding area, most significantly, the proposed one-acre Shadowood Subdivision adjacent to the eastern boundary of the subject property; and that the trend is toward rural residential development.

The county presented evidence that conversion of the subject property would not be in harmony with its land use plan and its objective to preserve prime farmland. Evidence was likewise adduced that 87% of the subject property contains prime agricultural soils and therefore was classified as prime farmland area. Although the county conceded that the subject property of itself is not an economic farm unit because it is not large enough, other evidence suggested that additional rental possibilities exist and that innovative soil conservation measures could increase productivity. There was substantial evidence that most of the surrounding property is zoned A-1 Agricultural and that the predominant land use in the area is agricultural. While other subdivisions are located within the two-square-mile radius of the subject property they were distinguished on the basis of time of reclassification, proximity to municipalities and urban centers, physical characteristics and soil content. It was noted that several nearby residential and estate uses are located near unincorporated towns or existing municipalities. As to the proposed Shadowood Subdivision immediately adjacent to the subject property, there was testimony that it was not prime agricultural land, that it is almost completely wooded and has deeper slopes. Another subdivision close by, Kings Court Subdivision, was classified and developed prior to the enactment of the year 2000 land use plan.

There was a conflict in testimony as to the suitability of the subject property for one-acre residential development. The trial judge in his final order found that the plaintiffs had failed to establish by a preponderance of the evidence that the proposed use of the subject property is reasonable.

We review the record under the well-established factors. See, *e.g.*, *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47. See also *Wright v. County of Winnebago* (1979), 73 Ill. App. 3d 337, 341.

The existing uses and zoning of the surrounding area have been held to be of paramount importance in assessing the reasonableness of a zoning

classification. *LaGrange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 309. See also *Jackson v. County of Du Page* (1973), 10 Ill. App. 3d 497, 499.

■■ From the testimony it is clear that the predominant zoning in the area is A-1 Agriculture and that the predominant land use is also agricultural. There were other land uses within the two-square-mile area of the subject property; but the mere fact that exceptions exist to the predominant character of an area does not require a finding that zoning which would preserve the predominant classification is error. (See *Jackson v. County of Du Page* (1973), 10 Ill. App. 3d 497, 500.) The nonagricultural uses either existed prior to the recent zoning amendments, were more proximate to urban centers and required services, or were distinguishable because of physical characteristics making them unsuitable for farming.

■■ There is testimony in the record as to the loss in value to the owners if the agricultural zoning is applied. There was testimony on behalf of the plaintiffs that the subject property as presently zoned is of a value of less than $4,000 per acre; but that if zoned E-1, allowing for one-acre residential development, the value would be $18,000 to $20,000 per lot. There is no testimony in the record as to the cost of development, however. The county does not essentially dispute the valuation testimony offered by the plaintiffs and concedes that the property is worth considerably more for subdivision purposes. A concededly lower value of the property for agricultural use alone is insufficient, however, to overcome the presumption of the validity of the ordinance. (*Reeve v. Village of Glenview* (1963), 29 Ill. 2d 611, 616. See also *Jackson v. County of Du Page* (1973), 10 Ill. App. 3d 497, 500; *Parkway Bank & Trust Co. v. County of Lake* (1979), 71 Ill. App. 3d 421, 424-25.) Moreover, the loss in value becomes significant only where the public welfare does not require the restriction. *LaGrange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 309.

The consideration of the public welfare does not support plaintiffs' argument on the record before us. The plaintiffs do not challenge the constitutionality of the zoning ordinance except as applied. They agree that the preservation of prime farmland is a valid zoning objection but argue, generally, that the county has placed too much of its territory in that category; particularly, that the subject property is not prime farmland which should be preserved. While the plaintiffs produced testimony in support of their argument there was also testimony on behalf of the county which was conflicting.

There was testimony by the coordinator of agricultural programs at McHenry County College that 87% of the property was prime agricultural land under United States Department of Agriculture standards. The witness based his opinion on the soil types. A witness employed with the

United States Department of Agriculture Soil Conservation Service as a district conservationist also testified and gave his opinion that 87% of the property contained prime agricultural soils. In his opinion the subject property would be classified as prime farmland area. There was also testimony that the highest and best use of the land was for agriculture.

While there was testimony that the farm had not been an economic success there was also testimony that under "high level" management the farm would produce between 115-125 bushels per acre rather than the approximate 100 bushels per acre the owners claimed they were producing; that the average yield for farmland in McHenry County was 104 bushels per acre; and that although the small size of the farm would have a bearing on its being a good economic unit, it could be combined with other property and more effectively managed.

██ Another significant aspect in the case is the county's adoption of a comprehensive plan for the area. One commentator has stated with respect to agricultural zoning: "In determining the validity of a particular zoning ordinance, the court will examine whether there exists a reasonable comprehensive plan for the area." (3 Rohan, Zoning and Land Use Controls §19.02(2), at 19-13.) The adoption of a comprehensive plan which incorporates valid zoning goals increases the likelihood that the zoning of a particular parcel in conformity therewith is not arbitrary or unrelated to the public interest. The courts in Illinois have increasingly accorded importance to the existence of a comprehensive plan in reviewing zoning cases. See *Concerned Citizens v. City of McHenry* (1979), 76 Ill. App. 3d 798, 804; *Parkway Bank & Trust Co. v. County of Lake* (1979), 71 Ill. App. 3d 421, 426; *Forestview Homeowners Association v. County of Cook* (1974), 18 Ill. App. 3d 230, 240-43.

██ A comparison of the gain to the public against the hardship to the owner does not support a reversal. The major hardship to the particular plaintiffs is the lost profit from the proposed development. As we have previously noted, such hardship has not been a particularly significant factor since it appears in practically all cases involving a change in classification to a different and usually more intensive use. (See *Parkway Bank & Trust Co. v. County of Lake* (1979), 71 Ill. App. 3d 421, 425.) The unique consideration in agricultural zoning, which includes the obvious public interest in preserving good farm land, must be balanced against this consideration of loss in value and profit.

Plaintiffs rely on *Smeja v. County of Boone* (1975), 34 Ill. App. 3d 628, and *Pettee v. County of De Kalb* (1978), 60 Ill. App. 3d 304, where agricultural zoning was held arbitrary in relation to the properties in question. However, those cases present a very different circumstance. In *Smeja*, the property was a 50-acre tract, 35 acres wooded and 15 acres "sub-marginal" land. Thus preserving the tract as farm land was found to

bear no relation to the health, safety, morals, comfort or general welfare. In *Pettee*, the 80-acre tract had severe drainage problems on 25 acres and the court found that it was at best marginal farm land. Although concluding that farm land could be characterized as an essential natural resource, the benefit to the public of the marginal farm land was minimal, whereas the hardship imposed upon the plaintiff was substantial.

■■ On the record before us we conclude that the plaintiffs have neither overcome the presumption of the validity of the legislative judgment nor satisfied their burden of proving by clear and convincing evidence that the ordinance, as applied, is arbitrary, unreasonable, and without substantial relation to the public health, welfare and safety. See *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 181.

### No. 80-150—THE VOSS-NEVEU APPEAL

The Voss property is a 176-acre parcel located approximately 4 miles southerly from the City of Marengo and 4 miles northwesterly from the interchange of I-90 and Illinois Route 20 in Coral Township which is currently zoned A-1 Agricultural. Voss had sold one-half of the property to the plaintiffs, Edward Neveu and Delores Neveu, his wife. The Neveus had also contracted to purchase the remainder of the Voss property conditioned on rezoning. The plaintiffs sought to rezone the properties into residential parcels with a minimum lot size of one acre. The county board denied rezoning and the plaintiffs filed a declaratory judgment suit in the circuit court. At the time of the trial, in September 1979, the existing zoning was F-Residential, which allowed residential development on lots of not less than 5 acres. The evidence adduced at trial, while relevant to the zoning then in force, was also pertinent to the change to the A-1 classification pursuant to the October 4, 1979, comprehensive plan. In the final order entered on February 1, 1980, the trial judge took judicial notice of the 160-acre minimum lot restriction and rendered judgment in light of the restriction then in effect.

Voss testified that he had farmed the property since 1959. He stated that his average per acre yield over the past five years was 30 bushels for beans, 40 bushels for wheat, and 85 bushels for corn. Some of his land is used as pasture for cattle. He said that the crop yield "will probably sustain the operation" but he "barely made taxes" off the pasture land. Of the 176 acres about 130 are tillable. To him the farm is not an economic unit. There was conflicting testimony among the expert witnesses as to the level at which the farm was being managed by Voss and whether the yield could be improved. An accredited rural appraiser and professor of agricultural economics testified in an evidence deposition that there was a "pretty decent" level of management and that the mixture of prime and nonprime soils precluded an economically acceptable yield. He also

testified that 100 bushels per acre is considered a break-even point in Illinois.

However, another witness, who was the coordinator of agriculture at McHenry County College, testified that the yield could be improved by better management, specifically by superior timing of plowing, closer planting of rows, and improved drainage. Under high-level management he would expect a yield of 118-125 bushels of corn per acre based on a circular prepared by the University of Illinois and from his own experiments.

There was also conflict with respect to the percentage of prime soils on the property. Plaintiffs offered an exhibit to show that only 45% of the soils are prime; however, defendant's evidence of a soils map based on United States Department of Agriculture Soil Conservation Service criteria shows 90% of the soils as prime.

The experts also disagreed as to whether plaintiffs' planned development of roughly 120 one-acre lots with septic field would be suitable.

There was testimony that as to surrounding property a number of uses were present, but according to a recent land survey conducted by the county planning department Coral Township is primarily agricultural. The land along Voss Road has six homes and is used primarily for agriculture. The land directly adjacent to the subject property is zoned A-1 Agricultural conditional use and is used for radiator repair. The land to the north and to the west is similar in character and is primarily agricultural.

There are also several subdivisions in the surrounding area. Located about one-quarter of a mile east of the subject property there is the Ox Bow Woods Subdivision containing lots ranging in size from 1.5 to 3.5 acres. It was recorded in 1967, at which time the F zoning classification allowed for residential development on lots of 1¼ or more acres. Harmony Hills Subdivision is one-quarter mile southeast of the subject property and has an average lot size of 1.5 acres. It was recorded in 1972, also prior to the 1974 zoning amendment, which increased the minimum lot size in F zoning to 5 acres. It was developed in four units, the final unit being recorded in 1978. Coral Woods Subdivision is located three-quarters of a mile northwest and is roughly 2 miles from the City of Marengo. There was also testimony concerning the two recent variations for subdivision development which were granted for parcels within a 4-mile radius of the Voss land. Plaintiffs' experts stated that the trend in the area is residental based on their study of real estate sales in the area, the location and physical characteristics of the property and the demand for such housing. Defendant's experts disagreed and relied on the year 2000 plan, which they said would be frustrated by allowing the rezoning.

There were disagreements among the expert witnesses concerning

whether the proposed rezoning would be compatible with surrounding uses or would unduly burden public services, such as schools, roads, fire and police. There was evidence that agriculture and related industries comprise a $140,000,000 a year business in McHenry County.

The trial judge found that the plaintiffs had not met their burden of proving that the existing zoning was arbitrary and unreasonable and that the A-1 zoning was in accordance with the McHenry County comprehensive land use plan; further, that a reasonable difference of opinion was evidenced concerning the suitability of the property for agriculture. The trial court did not make a finding as to whether the proposed use by plaintiffs was reasonable.

■■ The uses and zoning of the area within a 2-mile radius as shown by defendant's evidence show that the area is primarily agricultural with scattered residential subdivisions. The two subdivisions nearest to the subject property were recorded before the 1974 amendment to the zoning ordinance raising the minimum lot size to 5 acres; the Coral Woods Subdivision northwest of the property was recorded before the adoption of the land use goals and objectives in 1978. Thus the court could properly conclude that the predominant character of the area is agricultural and that the exceptions do not destroy this conclusion. *Jackson v. County of Du Page* (1973), 10 Ill. App. 3d 497, 500.

The evidence is clear that the land values have been diminished by the current zoning to a value of approximately $500,000 as farm land from a value of about $1,440,000 minus subdivision development costs, which were not detailed. However, lower property values alone are insufficient to overcome the presumption of validity of the ordinance. *Reeve v. Village of Glenview* (1963), 29 Ill. 2d 611, 616; *Jackson v. County of Du Page* (1973), 10 Ill. App. 3d 497, 500; *Parkway Bank & Trust Co. v. County of Lake* (1979), 71 Ill. App. 3d 421, 424-25.

The defendant presented evidence based on Soil Conservation Service criteria that the property contains 90% prime soils and expert testimony that the farm could produce a profit if properly managed based on the productivity of the soil. While this evidence was in conflict with plaintiffs' witnesses the court's finding that the evidence was not conclusive on this question does not appear to be against the manifest weight of the evidence. Where there is room for a fair difference of opinion as to the reasonableness of the zoning classification it will not be overturned. *Jackson v. County of Du Page* (1973), 10 Ill. App. 3d 497, 501.

■■ The same factors as to the effect on the health, safety, or general welfare as we have discussed in connection with the Wilson appeal are applicable in connection with the Voss-Neveu appeal. Similar considerations of the proper balance between the loss to the owner and the impact of the proposed rezoning on the public welfare which we have applied to

the Wilson appeal also apply here. While there are factual differences, the predominant factors in both appeals are the predominantly agricultural nature of the surrounding area, and the objective of McHenry County to promote the public interest by preserving prime farm land and funneling residential development toward existing urban centers. The application of traditional zoning principles to the Voss-Neveu properties leads us to conclude that the trial court's determination to apply A-1 zoning is not arbitrary and that the judgment is not against the manifest weight of the evidence.

The judgments are affirmed.

Affirmed.

LINDBERG and VAN DEUSEN, JJ., concur.