227 N.J. Super. 396 (1988)
547 A.2d 725
HOBART R. GARDNER, PLAINTIFF,
v.
NEW JERSEY PINELANDS COMMISSION, ET AL. DEFENDANTS.
Superior Court of New Jersey, Chancery Division Burlington County.
Decided July 8, 1988.
*397 Patrick McAndrew, for plaintiff (Brandt, Haughey, Penberthy, Lewis & Hyland, attorneys).
Mary C. Jacobson, Deputy Attorney General, for defendants.
*398 WELLS, J.S.C.
This is an inverse condemnation action brought on verified complaint and order to show cause. I note at the outset that it should have been captioned in the Law Division. N.J.S.A. 20:3-5. Orleans Builders and Dev. v. Byrne, 186 N.J. Super. 432 (App.Div. 1982). Nonetheless, this court will decide it to avoid an unnecessary transfer. Cf. R.4:3-1(b). The present motion is one to dismiss for failure to exhaust administrative remedies and to state a claim upon which relief can be granted. Since matters outside the complaint itself have been submitted the court has treated the motion as one for summary judgment. At least, in part, the case is ripe for such disposition.
Before proceeding the court notes that this case is not an appeal from the final decision or action of a State Administrative Agency under R.2:2-3(a)(2). The case does not challenge the Pinelands Commission's procedure in adopting its second Comprehensive Management Plan or any decision or action under that plan. The action asserts that in certain material respects the Comprehensive Management Plan as embodied in N.J.A.C. 7:50-1 et seq; 29 N.J.R. 2011 constitutes a partial taking of plaintiff's property. That allegation is cognizable here. Pfleger v. N.J. State Hwy Dept, 104 N.J. Super. 289 (App.Div. 1968). Cf. Montclair v. Twp. of Hughey, 222 N.J. Super. 441 (App.Div. 1987); Asbury Park Bd. of Education v. Murnick, 224 N.J. Super. 504 (App.Div. 1988).
Plaintiff alleges that he is the owner of a 216.5 acre farm in Shamong Township which has been in his family since 1902. He presently raises and sells sod and the farm is mortgaged for over $200,000. Situate thereon are a two family house and related barns and outbuildings. The balance of the land is farmland or wooded. Over the years plaintiff has watched as zoning regulations applicable to his farm have become more and more stringent.
The gist of plaintiff's complaint is that with the Commission's adoption of its second Pinelands Comprehensive Management *399 Plan (CMP) in November 1987 the State crossed the line between permitted regulation of private property and a partial taking thereof. Plaintiff would agree to submit to the Commission a development plan using the density permitted under a provision of the CMP  one house per 40 acres. N.J.A.C. 7:50-5.24(a)3 He argues that the required exaction from him of a deed restriction against use for other than agricultural purposes as a condition of approval for such a plan constitutes a partial taking of his property for which just compensation should be paid.
More specifically, plaintiff alleges that prior to the enactment of the Pinelands Protection Act (Act) N.J.S.A. 13:18A-1 et seq, effective June 28, 1979, he was able, under Shamong's zoning ordinance, to subdivide his farm into about 200 building lots. Following the enactment of the Act and the promulgation of the first CMP his farm was included in the Agricultural Production Area whereunder the density of allowed housing was reduced to one home per ten acres. Under that CMP plaintiff began a development plan for a 17 lot "farmette" subdivision. Before those plans got very far, however, the Commission adopted a second CMP which identified certain permitted uses in Agricultural Production Areas including the following:
Residential dwelling units at a gross density of one unit per 40 acres, provided that the units shall be clustered in accordance with (c) below. N.J.A.C. 7:50-5.24(a)3.
Subparagraph (c) provides:
No residential dwelling unit shall be located on a lot of less than 3.2 acres: provided, however, that a municipality shall require the residential density assigned pursuant to N.J.A.C. 7:50-5.24(a)3 to be clustered on one acre lots ... The remainder of the parcel not assigned to individual residential lots shall be permanently dedicated for agricultural uses through recordation of a restriction on the deed to the property. N.J.A.C. 7:50-5.24(c)
The court finds, as plaintiff alleges, that these provisions effectively reduce the number of possible houses on his farm to five, clustered on one acre lots, and require a permanent dedication of his remaining property  nearly 98% of it  to farmland. Furthermore, the other clauses of N.J.A.C. 7:50-5.24 are as stringent *400 as subparagraph (a)3. Section 5.24(a)(1) allows dwellings on 3.2 acres but the occupant must be "culturally linked" to "the essential character of the Pinelands," 5.32(a)3i-iii, and "cannot have developed a dwelling unit within the previous five years." 5.32(a)2. Section 5.24(a)2i-iv permits one house per 10 acres but is conditioned upon active farm use . . Another condition, as in the case of "culturally linked" housing, requires that a residential lot must not have been "subdivided from the property within the previous five years." 5.24(a)2v. These provisions relating to housing and the other uses permitted in the Agricultural Production Area[1] effectively limit the development of vacant land to agricultural uses or uses closely allied therewith or accessory thereto.
The Commission's affidavits, submitted by its Assistant Directors for Planning and Management and for Development Review, track the almost 10 year history of the comprehensive regulatory scheme adopted by the Commission under the aegis of the Act. Beginning in 1982 a significant issue under discussion was "whether, and under what conditions, non-farm housing should be permitted in Agricultural Production Areas." Stokes Affidavit, Paragraph 5. Apparently, under the first CMP "the Commission experience with the agricultural housing provision suggested that it was evolving into a 10 acre subdivision *401 requirement with no guarantee that farm uses would continue after construction." Stokes Affidavit, Paragraph 6. The Commission staff recommended a two-prong approach to correct this perceived problem with the CMP:
A large-lot program was endorsed that would allow a housing density of 1 unit per 40 acres, with a requirement that the homes be located on one acre lots. The Subcommittee also decided that the existing farm-related housing provision in the CMP should be strengthened to ensure that the housing be accessory to an active agricultural operation. Stokes Affidavit, Paragraph 6.
... Our report went on to state that the Commission's general practice when clustering was to require that the remainder of the property be subject to a perpetual deed restriction to protect it from future development.
Eventually the Commission adopted the approach which is now found embodied in the provisions quoted on pages 398-99, supra.
The test for when a regulatory action by government amounts to a taking is reasonably well settled in this State. In Morris County Land v. Parsippany-Troy Hills, 40 N.J. 539, 557 (1963) the court said that a taking occurs when the regulation "so restricts the use that the land cannot practically be utilized for any reasonable purpose or when the only permitted uses are those to which the property is not adapted or which are economically unfeasible." The test has been used with arguable consistency. Compare Morris County, supra, Lomarch Corp v. Mayor of Englewood, 51 N.J. 108 (1968) and Sheerr v. Evesham Twp., 184 N.J. Super. 11, 51-56 (Law Div. 1982) where a taking was found with E. Rutherford Ind. Pk v. State, 119 N.J. Super. 352 (Law Div. 1972); Cappture Realty Corp v. Bd of Adj Elmwood Park, 126 N.J. Super. 200, 216-17 (Law Div. 1973) Sands Point Harbor, Inc. v. Sullivan, 136 N.J. Super. 436, 440 (App.Div. 1975); American Dredging Company v. State, 161 N.J. Super. 504 (Chan.Div. 1978); Usdin v. DEP, 137 N.J. Super. 311 (1980), where no taking was found. In a comprehensive review of these cases and many others Judge Haines, in Sheerr, supra, summarized his reasons for finding a taking in that case as follows:
[The Evesham regulations] go too far, destroy beneficial use, deny any reasonable return on the property and fail to advance a legitimate municipal interest. *402 When the public good is balanced against the private harm, the harm far outweighs the good. No doubt the public will benefit if the Sheerr property is kept in its natural state since its trees will provide an appealing vista. No other public benefit is shown to exist. The public cannot use the property: it is privately owned. On the other hand, the property has been greatly depreciated in value and denied the opportunity for any realistic use. The regulations do not represent a valid exercise of the police power; they are not "reasonable in degree and ... necessary to the physically harmonious growth of land use in the municipality, [serving] the overall public interest of the community." Harrington Glen, supra 52 N.J. at 32. They fall clearly with the rule of Morris Cty. Land, which held that restricting the use of land to open space was a taking.
The court concludes that Sheerr and the other "taking" cases are distinguishable from the instant case. Regulation in this case has not crossed the line. Analysis must commence with the finding that the Commission is vested with plenary authority to regulate development in the Pinelands. This authority encompasses the power, almost identical to that of municipalities, to zone property. N.J.S.A. 13:18A-8. Cf. N.J.S.A. 40:55D-62 et seq. Indeed, the authority of municipalities located within the Pinelands to establish minimum zoning standards is for all practical purposes preempted by the Commission at least until their zoning ordinances are "certified" by the Commission as in compliance with its minimum standards. App. of Madin/Lord Land Dev. Intern., 103 N.J. 689 (1986); N.J.S.A. 13:18A-12.
Agricultural resources are among those targeted for preservation under the comprehensive management scheme envisioned by the Act. N.J.S.A. 13:18A-2. It is not surprising that under the second CMP, formulated on the basis of intensive scrutiny of the first, nonfarm housing in the Agricultural Production Area experienced increased restriction. In effect, the Commission reversed a consistent pattern of municipal planning in this State which zoned undeveloped land for residential purposes, controlled it by lot size and related bulk standards and allowed agriculture to exist as an accessory or additional permitted use. Under the Commission's plan an Agricultural Production Area has been delineated within which *403 agricultural and agriculturally allied uses are primary and residential development plays an accessory role and is, therefore, only conditionally available.
This approach to zoning intended to protect agriculture has been accepted in other states as not crossing the line between permissible regulation and a taking. See generally Rohan, Zoning and Land Use Controls, Chapter 19, (1986). In Gisler v. County of Madera, 38 Cal. App.3d 303, 112 Cal. Rptr. 919 (1974) an owner's land had been subject to a 2.5 acre residential lot subdivision since 1913. In 1965 the county, by ordinance, placed the land in an ARV-20 zone which provided for exclusive agricultural use and prohibited sales of parcels of less than 18 acres. As against the allegation that the land had been taken the court said:
In Morse v. County of San Luis Obispo (1967) 247 Cal. App.2d 600 [55 Cal. Rptr. 710], the county zoned rural property located in the area of small farms A-1-5, a classification which requires a minimum lot size of five acres for a single family dwelling. In holding that the ordinance was not a property-taking device but a regulation of the uses of land within the police power, the court said: "Absent any showing to the contrary we are entitled to presume that the decision of the county to preserve the agricultural nature of the area and to deny an intensification of habitation near the airport was a reasonable exercise of the zoning power designed to prevent urban sprawl and to forestall the development of residential zones in areas of the county susceptible to excessive noise or above-average hazards. [Citation.]" (At p. 603, 55 Cal. Rptr. at 712.)
In the present case the property always has been and still is used for agricultural purposes, as is all the property in the surrounding area. The County, in the exercise of its sound discretion, impliedly determined that the minimum 18-acre parcel size is necessary in aid of the preservation of the agricultural character of the area, and since that is a question upon which reasonable minds might differ, there should be no judicial interference with the legislative determination. (Clemons v. City of Los Angeles, supra, 36 Cal.2d 95, 98-99) [222 P.2d 439]
* * * * * * * *
We first observe that the mere fact that the appellants may have suffered some damage by reason of the enactment of the valid zoning ordinance does not entitle them to compensation...., "Public entities are not bound to reimburse individuals for losses due to changes in zoning for within the limits of the police power `some uncompensated hardships be borne by individuals as the price of living in a modern, enlightened and progressive community.'" Gisler, supra 307-308 [112 Cal. Rptr. 919]
*404 See also Pinheiro v. County of Marin, 60 Cal. App.3d 323, 131 Cal. Rptr. 633 (1976). In Joyce v. City of Portland, 24 Or. App. 689, 546 P.2d 1100 (Or. App. 1976), the City rezoned an 842 acre parcel from low density residential use to farm and forest use. The court held:
We next consider plaintiffs' contention that the court below improperly sustained defendants' demurrers to plaintiffs' alternative causes of action for damages based on an allegation that the rezoning was an unconstitutional taking of property without just compensation.
* * * * * * * *
In their claims for damages, plaintiffs allege both that their property "is not suitable or economically usable for agricultural purposes" and that "the soil of the area cleared sufficient to be farmed is considered poor for agricultural purposes * * *." Hence, plaintiffs tacitly admit that their property can be beneficially used for agricultural purposes, albeit not as suitably or economically as it could have been before the zone change.
When a property owner can make substantial beneficial use of his property notwithstanding a zone change, the change does not constitute a taking of private property without just compensation in violation of Art. I, Section 18, of the Oregon Constitution.
In Wilson v. County of McHenry, 92 Ill. App.3d 997, 48 Ill.Dec. 395, 416 N.E.2d 426 (Ill. App. 1981), the County amended its zoning ordinance to provide a 160 acre lot minimum in agricultural zones pursuant to a land use plan which recited in substance that "it was an attempt to channel development toward existing urban centers; particularly recognizing prime agricultural land as a primary, finite material resource to be preserved." In sustaining the ordinance the court held:
Another significant aspect in the case is the county's adoption of a comprehensive plan for the area. One commentator has stated with respect to agricultural zoning: "In determining the validity of a particular zoning ordinance, the court will examine whether there exists a reasonable comprehensive plan for the area." (Rohan, "Zoning and Land Use Controls" Vol. 3, Sec. 19.02(2), page 19-13.) The adoption of a comprehensive plan which incorporates valid zoning goals increases the likelihood that the zoning of a particular parcel in conformity therewith is not arbitrary or unrelated to the public interest. The courts in Illinois have increasingly accorded importance to the existence of a comprehensive plan in reviewing zoning cases.
* * * * * * * *
A comparison of the gain to the public against the hardship to the owner does not support a reversal. The major hardship to the particular plaintiffs is lost *405 profit from the proposed development. As we have previously noted, such hardship has not been a particularly significant factor since it appears in practically all cases involving a change in classification to a different and usually more intensive use. (See, Parkway Bk. & T. Co. v. County of Lake, (71 Ill. App.3d [421] at 425, 27 Ill.Dec. 651, 389 N.E.2d 882).) The unique consideration in agricultural zoning, which includes the obvious public interest in preserving good farm land, must be balanced against this consideration of loss in value and profit.
Finally in Codorus Tp. v. Rodgers, 89 Pa.Cmwlth. 79, 492 A.2d 73 (1985) where the Township limited houses to six in number for a tract between 180 and 230 acres in size, the court stated:
The present content of the MPC in Pennsylvania reflects a nationwide legislative trend toward using zoning as one of the tools for the preservation of agricultural land. As noted four years ago in Coughlin and Keene, The Protection of Farm Land: An Analysis of Various State and Local Approaches, 33 LAND USE LAW 7 ZONING DIGEST 5, 6-8 (1981), there were then 270 local (county and municipal) agricultural zoning efforts which the authors had identified. Their survey showed that, in addition to rather simplistic ordinances requiring only a substantial minimum lot size (ranging from as little as ten acres to as much as 640 acres), local legislative patterns employed exclusive agricultural use districts and also area-based allocation ordinances  similar to the one before us here  which allow owners to build additional dwellings for each unit of land of a specified area that they own.
As yet, the volume of precedents is small. In Joyce v. City of Portland, 24 Or. App. 689, 546 P.2d 1100 (1976), the Court of Appeals of Oregon held that exclusive farm and forest use zoning did not constitute an unconstitutional taking. More to the point, Gisler v. County of Madera, 38 Cal. App.3d 303, 112 Cal. Rptr. 919 (1974), upheld the validity of an ordinance providing for exclusive agricultural zoning with a minimum eighteen-acre parcel size.
The most recent decision on point, nationally speaking, is Wilson v. County of McHenry, 92 Ill. App.3d 997, 48 Ill.Dec. 395, 416 N.E.2d 426 (1981), in which the Illinois Appellate Court upheld the validity of agricultural zoning, in a county zoning ordinance which set a 160-acre lot area minimum in the agricultural district for the declared objective of promoting the public interest by preserving prime farmland and channeling residential development toward existing urban centers. Although the opinion notes, from the evidence, that such agricultural zoning diminished the market value of the land from $1,440,000 as raw land for residential subdivision development to a value of approximately $500,000 as farmland, the court held that such zoning, in the context of a communitywide comprehensive plan (as here), was neither arbitrary nor unreasonable, in that comparison of the gain to the public against the impact upon the owners would not support a decree invalidating it, and the landowners had not satisfied their burden of proving that the regulation lacked a reasonable relationship to the public health, welfare and safety.
In general accord with the principles enunciated by these cases, the court holds that the significant limitations on non-farm *406 housing within the Pinelands imposed as a method of preserving intact and viable farmland is a reasonable exercise of regulatory power under the Act and does not constitute a taking or partial taking of property. Whether such zoning outside of the Pinelands, where other important policy issues are at stake potentially balancing the State's interest in the preservation of farmland, would constitute a taking is not, of course, before this court. See So. Burl. County NAACP v. Mt. Laurel Twsp., 92 N.J. 158 (1983). Its holding, therefore, must be held to the facts of this case.
Distinguishing this case from those where regulation was found not to effect a taking plaintiff urges that the requirement to record a deed restriction dedicating his property to agricultural uses in the event he applies to develop five houses under N.J.A.C. 5.24(a)3 constitutes a partial taking of his property for which just compensation should be paid. It is true that such a restriction grants the State an interest in futuro in Mr. Gardner's property and binds the property somewhat more securely than a changeable zoning rule. But even so, the clustering and deed restriction merely serve the same purpose as the conditions imposed on housing under Sections 5.24(a)1 and (a)2: they implement the basic policy of limiting non-farm housing in the Agricultural Production Area. Thus, if it is plaintiff's argument that a partial taking occurs solely because a recordable restriction is required it fails. There is a clear nexus between such restriction and the avowed purpose of the CMP to permit a few non-farm dwellings in Agricultural Production Areas while at the same time minimizing the negative effect of such housing on agricultural uses and promoting the preservation of actual farm use.
This nexus distinguishes this case from Nollan v. California Coastal Commission, ___ U.S. ___, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) where the court struck down a commission requirement that a landowner grant a public access easement across his land to a beach as a condition of granting a building permit to rebuild a home destroyed by fire. Building permits achieve *407 other ends  not the exaction of easements. Likewise Battaglia v. Wayne Twp Planning Bd., 98 N.J. Super. 194 (App.Div. 1967) is distinguishable. There the owner of a single lot was required to reserve a 50 foot easement across his land to property of the municipality and eventually to dedicate it, as a condition of building an industrial building. The condition was struck down as outside the authority of the Planning Board on site plan review. Site Plan review has other aims  not those of assuring access to non-owned lands.
Similarly, the other cases cited by plaintiff are inapposite. They concern the ability of a municipality to compel a developer to provide off-site improvements or dedicate land for future highway use. These cases hold that such requirements are constitutional provided there is a specific and immediate rational nexus between the requirement, and the "needs created by and benefits conferred upon the subdivision." Longridge Builders Inc. v. Planning Board of Princeton Tp., 52 N.J. 348 (1968); 181 Incorporated v. Salem Cty Planning Bd., 133 N.J. Super. 350 (Law Div. 1975); Ellis v. Larchmont Pharmacy Plaza Inc., 208 N.J.Super 359 (App.Div. 1986). The case at bar does not involve off-site improvements. The "dedication" of land at issue here is clearly related to an immediate and significant public need. The deed restriction imposed by the Commission's regulations bears a rational nexus to a principal legislative objective of the Act  to preserve farmland within the Pinelands. Gardner does not contend the second CMP was motivated by an intent to reduce the value of his land in order to facilitate its purchase by the State. Riggs v. Long Beach Twp., 109 N.J. 601 (1988). His farm has not been rendered valueless; its practical use has not been affected. Plaintiff can derive as reasonable a return therefrom now as he had prior to the second CMP. He does not assert that agricultural use is maladapted or economically infeasible. Nor does the restriction affect the security of the mortgages on the property. Cf. AMG Associates v. Twp of Springfield, 65 N.J. 101, 112 esp. fn. 4 (1974).
*408 In addition the court finds that the second CMP was adopted to prevent a public harm, the gradual despoliation of viable farmland. Farmland is a valuable resource which the State can protect as much as other finite resources such as coastal wetlands, riparian lands and water. Accordingly, the regulatory scheme is not compensable. Compare Usdin, supra, American Dredging, supra and the discussion of the benefit-conferring/abuse preventing distinction in Sheerr, supra, 184 N.J. Super. at 52-53 in which Judge Haines concludes it is a "doubtful test," Sheerr, supra 56 with Orleans Builders, supra, 186 N.J. Super. at 447-448, a case decided a few months after Sheerr in which the Appellate Division approves the test. For the stated reasons the court will grant the motion to dismiss the complaint in so far as it alleges a claim for inverse condemnation.
The State also sought dismissal for failure to exhaust administrative remedies. Plaintiff has not applied to the Commission for approval of any development plan under the CMP and the State urges that it is premature for a court to decide the inverse condemnation issue before knowing what exact uses or densities plaintiff would be allowed by the Commission. But the Commission's affidavits satisfy the Court, that, at least in Agricultural Production Areas, the restriction to agricultural use is so central to the policy of preserving Pinelands farmland that it would be futile to force plaintiff to make an application for a more intensive residential use than that allowed under the new CMP (say, for instance, his original 17 lot farmette plan) and ask for a waiver of the restriction, clustering or "active use" requirements. In short, I find, given the record before me, that the Commission would hardly be likely to waive or even relax these new regulations in plaintiff's case. Cf. N.J.A.C. 7:50-4.66. For these reasons, dismissal for failure to exhaust administrative remedies is not appropriate. Cf. N.J. Civil Service Ass'n v. State, 88 N.J. 605, 613 (1982).
Having decided that the regulatory scheme itself as embodied in N.J.A.C. 7:50-5.24(a)3 and 5.24(c) does not constitute a taking *409 of plaintiff's property he is free to make any application for development to the Commission he chooses including one for hardship waivers. N.J.A.C. 7:50-4.66. Neither he nor the Commission should read anything in this opinion as precluding such a submission nor as mandating a particular decision regarding the same. Any adverse decision on such a plan, including an attack on the reasonableness of the regulations themselves as applied to plaintiff's property, would be appealable to the Appellate Division on the record before the Commission. R. 2:2-3(a)(2).
Indeed, plaintiff may so apply without prejudice to his right to appeal this decision which, however, is not final because of the pendency of a late-blooming equal protection argument suggested in plaintiff's brief. The cause of action under the equal protection clause, if any, is not ripe for decision on this record and, in fact, has not been properly pled. Accordingly, it must either be dismissed before the decision herein becomes final or it must be the subject of an amended complaint. If the latter course is taken, upon the joinder of this issue case management will be instituted.
Deputy Attorney General Jacobson should submit an appropriate order.
NOTES
[1] N.J.A.C. 7:50-5.24(a) also permits the following uses:

1. Forestry, 5.24(a)5
2. Low intensity recreational uses, 5.24(a)6
3. Agricultural commercial establishments, excluding supermarkets, restaurants and convenience stores, 5.24(a)7
4. Agricultural products processing facilities, 5.24(a)8
In Shamong Township, which is uncertified, N.J.S.A. 13:18A-12, the Commission could also consider the following uses under N.J.A.C. 7:50-5.24(b):
1. Pinelands resource related industries, 5.24(b)2
2. Airports and heliports which are accessory to agricultural uses ..., 5.24(b)3
3. Light industrial uses, 5.24(b)4
4. Fish and Wildlife management, 5.24(b)5
5. Landfills, 5.24(b)8