603 A.2d 65

JOHN PAPPAS, PLAINTIFF–APPELLANT, v. BOARD OF ADJUST-
MENT OF THE BOROUGH OF LEONIA, AND MAYOR AND
COUNCIL OF THE BOROUGH OF LEONIA, DEFENDANTS–
RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 17, 1991—Decided February 14, 1992.

Before Judges MICHELS, O'BRIEN and CONLEY.

*Thomas S. Howard* argued the cause for appellant (*Kirsch, Gartenberg & Howard,* attorneys; *Thomas S. Howard* and *Holly B. Tashjian,* of counsel and on the brief).

*William F. Rupp* argued the cause for respondent Board of Adjustment of the Borough of Leonia (*Rupp & Ten Hoeve,* attorneys; *William F. Rupp,* on the brief).

*Philip N. Boggia* argued the cause for respondent Mayor and Council of the Borough of Leonia (*Durkin & Boggia,* attorneys; *Priscilla M. Boggia,* on the brief).

The opinion of the court was delivered by

O'BRIEN, J.A.D.

Plaintiff appeals from the final judgment of the Law Division dismissing his claim for inverse condemnation. We affirm.

Plaintiff is the owner of Lots 16b and 17b in Block 38, as shown on the Tax Assessment Map of the Borough of Leonia. These two lots comprise a parcel measuring 75 feet square containing 5,625 square feet. The property is vacant land fronting on Orchard Place, which was purchased by plaintiff in 1980 for $15,000. Plaintiff and his wife own adjoining property known and designated as Lots 49 and 50 in Block 38 on the Tax Assessment Map, commonly known as 119 Orchard Place, which they acquired as tenants by the entirety in 1978.

The vacant lot is located in an A–3 residential district, which, by amendment to the zoning ordinance in 1986, requires a depth of 100 feet although retaining a required frontage of 50 feet

and a minimum square-foot area of 5,000 square feet. Plaintiff's application for a variance of 25 feet from the required depth of 100 feet was denied by the Board of Adjustment.

Plaintiff filed a two-count complaint in lieu of prerogative writs, which sought in the first count to reverse the denial of his application for a variance, and in the second count sought inverse condemnation. In a written opinion dated April 20, 1989, the Law Division reversed the denial of the variance and ordered the building inspector to issue a building permit. On defendants' appeal, in an opinion dated July 13, 1990, we reversed the Law Division and reinstated the resolution of the Board of Adjustment denying the requested variance. Since the Law Division judge had not addressed the second count of plaintiff's complaint seeking inverse condemnation, we remanded that issue to the Law Division "for consideration of the question of inverse condemnation about which we express no opinion."

On December 12, 1990, a different Law Division judge conducted a hearing on our remand. Plaintiff had retained new counsel and all parties had apparently filed briefs in the Law Division. At the hearing, plaintiff's counsel offered photographs of the property and an earlier subdivision map, which plaintiff had submitted in the belief that he needed a subdivision.[1] The court sustained defendant's objection to the subdivision map saying, "[B]ecause this is—the nature of this, there's no testimony set down and it's really nothing additional."

Thereafter argument ensued during the course of which the trial judge inquired, "Why did the Appellate Division remand the inverse condemnation? That's my question," to which counsel for respondent Borough of Leonia stated,

Judge, we have talked about that ourself. Why didn't they put everybody out of their misery here and why make us all come back and argue these points all over again? My only explanation is that because these issues were raised

---

[1] In 1986, plaintiff was informed by the Board of Adjustment that no subdivision was necessary.

below and counsel had an opportunity to present them to the trial Court, and the trial Court simply did not address, that the Appellate Division was not going to exercise original jurisdiction and decide that issue without giving counsel an opportunity to come before the court, show the photographs or whatever pieces of evidence that were submitted and let the Court make its initial finding. That's my understanding.

Counsel correctly noted that the purpose of the remand was to afford plaintiff the opportunity to present evidence in support of his claim for inverse condemnation, which had not been addressed previously by the trial court. Apparently, plaintiff decided not to submit any further evidence except the photographs and the subdivision map (which was rejected) and simply to rely upon argument. Yet, in his brief on this appeal, plaintiff argues that the trial judge on remand "declined to allow new evidence or to permit a *de novo* consideration of the record in the context of inverse condemnation, as opposed to agency review." However, plaintiff's counsel waited until after the trial judge had delivered her opinion to state, "[W]e would like to have the opportunity to supplement the record to indicate what that diminution in value would be," which he had apparently referred to in his brief.

Unfortunately, counsel and the trial judge referred to language in our opinion as "findings," binding upon the trial judge on remand upon the basis of which inverse condemnation should be denied. This was an incorrect interpretation of our opinion which addressed solely the question before us of whether the denial of the variance by the Board of Adjustment had been arbitrary, unreasonable or capricious. In reaching our decision we reviewed historical facts about the property which are apparently not disputed. Plaintiff purchased the property on February 17, 1980 for $15,000 from Shersue Development Corp. (Shersue), whose prior application for a variance from a required floating setback had been denied by the Board of Adjustment and such denial was affirmed by the Law Division and by us. Because plaintiff and his wife own the only building fronting on the east side of Orchard Place within 100 feet of the lot in question, their construction of a substantial addition to

the north side of their building in 1980 apparently changed the required front setback. Based on those historical facts, we noted plaintiff's argument that, from 1981 until 1986, when the zoning ordinance was amended, the property in question was a fully conforming building lot. Since this was the evidence initially before the Law Division and before us, it was also before the Law Division on remand. However, the remand judge made no findings of fact from that evidence.

■ An inverse condemnation action is different than an action reviewing an administrative determination by a board of adjustment to deny an application for a variance. An inverse condemnation action is a review of the effect of a zoning regulation on a property owner's constitutional right not to have his property taken for public use without just compensation under the Fifth Amendment to the United States Constitution, and Article I, paragraph 20, and Article IV, section 6, paragraph 3 of the New Jersey Constitution.

Thus, an inverse condemnation case is a "taking case," i.e., the property owner alleges that his property has been taken for public use without just compensation in violation of his constitutional rights. "[T]he Constitution measures a taking of property not by what a State says, or by what it intends, but by what it *does.*" *Hughes v. Washington*, 389 *U.S.* 290, 298, 88 *S.Ct.* 438, 443, 19 *L.Ed.*2d 530, 536 (1967) (Stewart, J., concurring). In *Sheerr v. Evesham Tp.*, 184 *N.J.Super.* 11, 51, 445 *A.2d* 46 (Law Div.1982), the court exhaustively compiled inverse condemnation cases in finding that a taking had occurred in that case. When the court makes such a determination, it is then necessary to address the remedy.[2]

---

2In *Sheerr*, Judge Haines noted that requiring the municipality to take title and pay the market value for the property was not appropriate, citing *Washington Market Enterprises v. Trenton*, 68 *N.J.* 107, 123, 343 *A.2d* 408 (1975), where our Supreme Court said, "Generally speaking, condemnation should be ordered only where eventual acquisition appears inevitable ... or where equitable considerations mandate that remedy." [184 *N.J.Super.* at 61, 445 *A.2d* 46]

The test for when a regulatory action by government amounts to a taking is reasonably well settled in this state. In *Morris County Land v. Parsippany-Troy Hills,* 40 *N.J.* 539, 557, 193 *A.*2d 232 (1963), the court said that a taking occurs when the regulation "so restricts the use that the land cannot practically be utilized for any reasonable purpose or when the only permitted uses are those to which the property is not adapted or which are economically infeasible." *See also Gardner v. New Jersey Pinelands Com'n,* 227 *N.J.Super.* 396, 401, 547 *A.*2d 725 (Ch.Div.1988), *aff'd,* 235 *N.J.Super.* 382, 562 *A.*2d 812 (App.Div.1989), *aff'd,* 125 *N.J.* 193, 593 *A.*2d 251 (1991). In the latter opinion in *Gardner,* the Supreme Court said:

> The critical remaining question is whether the regulations impair to an impermissible degree valuable property rights and interests. Diminution of land value itself does not constitute a taking. *E.g., Village of Euclid [v. Ambler Realty Co.], supra,* 272 *U.S.* 365, 47 *S.Ct.* 114, 71 *L.Ed.* 303 [1926]. Similarly, impairment of the marketability of land alone does not effect a taking. *Littman [v. Hazardous Waste Com.], supra,* 115 *N.J.* [154] at 163, 557 *A.*2d 314 [1989]; *see Kirby Forest Indus. v. United States,* 467 *U.S.* 1, 15, 104 *S.Ct.* 2187, 2196, 81 *L.Ed.*2d 1, 14 (1984). Also, restrictions on uses do not necessarily result in takings even though they reduce income or profits. *Southern Burlington County NAACP v. Township of Mount Laurel,* 92 *N.J.* 158, 273 n. 34, 456 *A.*2d 390 (1983). A regulatory scheme will be upheld unless it denies "all practical use" of property, *Harrington Glen, Inc. v. Municipal Bd. of Adjustment,* 52 *N.J.* 22, 29, 243 *A.*2d 233 (1968); or "substantially destroys the beneficial use of private property," *Schiavone Constr. Co. v. Hackensack Meadowlands Dev. Comm'n,* 98 *N.J.* 258, 263, 486 *A.*2d 330 (1985). [*Gardner,* 125 *N.J.* at 210–211, 593 *A.*2d 251]

When a plaintiff asserts that an ordinance is unconstitutional because it deprives him of the use of his property, "the burden is cast upon a plaintiff to prove that the ordinance unduly burdens his beneficial use of the land." *Spiegle v. Beach Haven,* 46 *N.J.* 479, 491, 218 *A.*2d 129, *cert. denied,* 385 *U.S.* 831, 87 *S.Ct.* 63, 17 *L.Ed.*2d 64 (1966). "It follows that an essential element of plaintiff's proof is the existence of some present or potential beneficial use of which he has been deprived." *Id.* at 491–492, 218 *A.*2d 129.

Plaintiff here contends that, although when he purchased the property it was not buildable because the denial of the variance

from the floating setback had been judicially affirmed, this changed when he and his wife built the addition on the north side of the building owned by them. Therefore, from 1981 until the amendment to the zoning ordinance in 1986, plaintiff claims he had a fully conforming building lot.[3] Plaintiff claimed that his lot, which was buildable between 1981 and 1986, had a value of between $120,000 and $130,000 relying upon evidence presented before the Board of Adjustment at a hearing on May 26, 1988. The record does not indicate whether the trial judge accepted this as proper evidence on the remand on the claim of inverse condemnation since she made no findings.

Thus, plaintiff claimed that the amendment to the zoning ordinance zoned this lot into inutility as in *Harrington Glen, Inc. v. Municipal Board of Adjustment, Borough of Leonia,* 52 *N.J.* 22, 243 *A.*2d 233 (1968), where the Supreme Court said:

> Denial of permission to build a home upon the lot deprives it of all productive or beneficial use. The only distinction between such zoning restriction and an actual taking by the municipality is that the restriction leaves the owner with the burden of paying taxes on the property, while the outright taking relieves him of that burden. Ordinarily, restraint upon all practical use, such as that which would follow from denial of a variance, is spoken of in terms of confiscation. [*Id.* at 29, 243 *A.*2d 233]

Thus, the question presented on remand was whether the amendment to the zoning ordinance increasing the required property depth denied plaintiff of all practical use of his property.

Obviously, in determining this issue a significant fact, about which there is apparently no dispute, is that plaintiff is one of the owners as a tenant by the entirety of the adjoining lot, similar to the applicant in *Galdieri v. Board of Adjustment of Tp. of Morris,* 165 *N.J.Super.* 505, 398 *A.*2d 893 (App.Div.1979). The original Law Division judge, in reversing denial of the variance in this case, distinguished *Galdieri:*

> In that case, the property owners had assembled lots and for many years had used and enjoyed those lots as part of their homesite and, thereafter sought to

---

[3]The 1986 ordinance increased the required depth of a lot to 100 feet.

divide out those lots which were nonconforming. In this case, the property in question has always been a separate lot—a wooded area, which the objecting neighbors have enjoyed and wish to continue to enjoy at plaintiff's expense. The argument that the lot is useable and not without utility, because it can be used as a garden, tennis court or swimming pool in conjunction with the plaintiff's home, is not persuasive for that same argument could be expanded to say that it could be utilized in its wooded state for aesthetic purposes.

In the context of determining whether the denial of the variance by the Board of Adjustment had been arbitrary, unreasonable or capricious, we found the trial judge's efforts to distinguish *Galdieri* as unpersuasive. However, immediately thereafter we said:

As in *Galdieri*, the members of the Board here and the judge of the Law Division found this to be a close case and so do we. In *Galdieri*, we noted that "a contrary determination by the Board might well have withstood legal attack." *Id.*, 165 *N.J.Super.* at 514, 398 *A.2d* 893. The same can be said in this case. We note that two of the members of the Board would have granted the variance. Another member who voted to deny the variance application said, "I have very ambivalent feelings on this." He then gave a lengthy explanation for his vote against the variance.

While there is much to be said for the trial judge's view, we conclude that he has substituted his judgment for that of the agency charged with the obligation to make the decision.

We then noted that the relevant inquiry was whether the decision denying the variance had been arbitrary, unreasonable or capricious. The similar factual circumstances in *Galdieri* were certainly relevant on that issue. However, both *Galdieri* and our earlier decision addressed the factual circumstance in the context of the denial of a variance, not a claim of inverse condemnation.

On the issue as to whether the amendment to the zoning ordinance had denied plaintiff of "all practical use" of his lot, the burden rested upon the plaintiff. The remand judge may have been misled by the following language which we used in connection with our discussion of "undue hardship" as it relates to an application for a variance under *N.J.S.A.* 40:55D–70c(1):

As in *Galdieri*, the p.q. adjoins property owned by plaintiff and his wife and is certainly available to him for use in conjunction with that property. As shown in the photographs received into evidence and as testified to at the hearing before the Board, the Pappas home erected on Lots 49 and 50 is

adjacent to the p.q. In fact, there was testimony that the detached garage is located approximately one and one-half feet from the property line with the driveway running along the property line. The Pappas home has frontage on Orchard Place of approximately 177.25 feet, and the testimony before the Board suggested that the area to the north of the Pappas home may contain sufficient area to create a conforming lot. [footnote omitted] Although plaintiff did establish that Dr. Roberts, the owner of Lot 18, would not sell him a parcel of land 25 feet by 75 feet to attach to the rear of Lots 16b and 17b, there was no testimony concerning why plaintiff could not use Lots 16b and 17b in conjunction with Lots 49 and 50. In fact, plaintiff did not testify at all before the Board.

These were comments on the evidence presented before the Board of Adjustment upon the basis of which they made their findings. They were not findings of fact made by us. As we observed, plaintiff presented no testimony why he could not use Lots 16b and 17b in conjunction with Lots 49 and 50. This referred to the absence of evidence from plaintiff to refute the inference to be drawn from the common ownership of the two lots. With respect to our comment, the trial judge on remand said:

THE COURT: What about my hypothetical? I'm going to page 14 of the Appellate Division decision. There was no testimony concerning why plaintiff could not use Lots 16B and 17B in conjunction with Lots 49 and 50. Now, of course, there's no reason why a plaintiff couldn't put grass on it and put lawn chairs out there. But could plaintiff do something more without actually deeding the property to himself?

MR. BOGGIA [attorney for the Borough]: Could he build a tennis court?

THE COURT: He could build—it could be an incidental use? Interesting question. I don't know. I don't think that—I don't know that the Appellate Division gives me leeway to even consider that, but I think it's an interesting question.

It is, of course, conceivable that the ordinance would prohibit the construction of an accessory use, such as a swimming pool or a tennis court, on a separate lot that did not contain a principal use, thereby necessitating a variance. Although the trial judge incorrectly concluded that our earlier opinion did not give her leeway to consider that, in any event, no evidence was presented by plaintiff on this issue for the court's consideration. Plaintiff offered no evidence before the remand judge to distinguish this case factually from *Galdieri*, although he did correctly argue that *Galdieri* was a zoning case and not an

inverse condemnation case, which, as he argued, "you must distinguish ... from a taking case."

While we conclude that the trial judge incorrectly considered herself bound by the language in our earlier decision, and thus did not make findings of fact and conclusions of law as required by *Rule* 1:7–4,[4] we affirm her decision dismissing the second count of the complaint seeking inverse condemnation because of plaintiff's failure to sustain his burden of proving that the amendment to the zoning ordinance has denied him of all practical use of his property. His bald contention that "I had a lot upon which I could have constructed a building without the need of a variance which I lost by the enactment to the amendment to the zoning ordinance" is insufficient to demonstrate that he has been denied all practical use of his property. If that bald contention were accepted, every property owner whose use of his property is reduced or lost by zoning regulations could make the same claim. Such an argument ended many years ago with the Supreme Court's decision in *Village of Euclid v. Ambler Realty Co.*, 272 *U.S.* 365, 47 *S.Ct.* 114, 71 *L.Ed.* 303 (1926), and the many succeeding cases upholding a municipality's right to enact zoning regulations.

Affirmed.

---

[4]Ordinarily we would remand for findings of fact and conclusions of law, but we deem that unnecessary in this case since plaintiff failed to present facts in support of his claim other than the contentions made in his quest for a variance before the Board of Adjustment.