**Donald FISHER, Plaintiff,**

v.

**Joseph A. HERTRICH, United Air Lines, Inc., and Unknown Others, Defendants.**

**No. 87 C 7811.**

United States District Court,
N.D. Illinois, E.D.

March 10, 1988.

---

**5.** Count II, a pendent state claim, is dismissed   without prejudice as well.

Peter F. Zullo, Law Offices of Peter F. Zullo, Chicago, Ill., for plaintiff.

Robert P. Casey, Elk Grove Township, Ill., Joel H. Kaplan, Gary S. Kaplan, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Donald Fisher brought suit against United Air Lines, Inc. ("United"); Joseph Hertrich, United's Director of Flight Operations; and unknown others in the Circuit Court of Cook County. Fisher's three-count complaint alleged assault and battery, intentional infliction of emotional distress, and a violation of his free speech rights under the Illinois constitution.

Defendants removed the lawsuit to federal court, claiming that this court had jurisdiction either because of diversity of citizenship or because Fisher's claims arise under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.* (1986). Apparently conceding that diversity does not exist, defendants now base their removal petition entirely on the RLA.

Before the court is Fisher's motion to remand his case to state court pursuant to 28 U.S.C. § 1447(c). For the reasons stated below, that motion is denied.

### FACTS

On August 1, 1985, Donald Fisher was standing in the United Flight Operations Area at O'Hare Airport waiting for his flight to depart. Fisher was employed by United as a pilot.

United had just suffered its first pilots' strike in over thirty years. Although the pilots had been back at work for approximately six weeks, some resentment remained. In particular, some senior pilots had begun wearing small yellow ribbons to protest United's treatment of employees who had honored the pilots' picket line. Fisher and several other pilots were wearing these ribbons.

Hertrich walked up to Fisher and instructed him to remove the ribbon. Fisher refused to do so, apparently because Hertrich had been working at O'Hare for only four weeks and Fisher did not recognize him. Hertrich then commanded Fisher to remove the pin, and again Fisher refused. At this point, Hertrich took Fisher's arm, turned him around, and proceeded to escort him out of the Flight Operations Area. Fisher subsequently was terminated for insubordination.

United's Flight Operations Manual ("FOM"), distributed to all United pilots, sets forth the company's standards regarding the personal appearance of its employees. It explicitly states that United flight officers may wear one of two United pins

and/or the Airline Pilots Association ("ALPA") pin; the wearing of all other pins violates company rules.

The collective bargaining agreement ("CBA") between United and the ALPA provides for the discipline or discharge of United pilots. Insubordination, defined by a United employee manual as the refusal to comply with a direct order, is one of the offenses for which a pilot may be disciplined or discharged.

Following his termination, Fisher sought redress through the grievance procedures negotiated by the ALPA and United. Hertrich, United, and the other unknown defendants harassed him, fabricated documents concerning his case, and otherwise singled him out for improper treatment, in order to cause him emotional distress and to deny him his right to free speech under the Illinois constitution.

## DISCUSSION

■ Section 1447(c) of Title 28 of the United States Code requires district courts to remand cases that were removed improvidently and without jurisdiction. Whether Fisher's case is one of those depends on whether his state law claims fall into an area that is completely pre-empted by federal law. *Caterpillar, Inc. v. Williams,* — U.S. ——, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). If so, it does not matter that plaintiff articulated only state claims in his complaint; under the "complete pre-emption" doctrine, any state claim intruding on an area occupied by federal law must be treated from its inception as a federal cause of action. *Id.*

■ The RLA completely pre-empts state law tort claims when adjudicating them requires the court to interpret the parties' collective bargaining agreement. *Leu v. Norfolk & Western Railway Company,* 820 F.2d 825, 829 (7th Cir.1987). In

such cases, the "remedy [under the RLA] is exclusive; the [plaintiff] has no state remedies." *Id.* (quoting *Graf v. Elgin,* 790 F.2d 1341, 1346 (7th Cir.1986)).

In its decision in *Farmer v. United Brotherhood of Carpenters & Joiners,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), the Supreme Court formulated an exception to the general pre-emption rule. It held that where the alleged conduct was so outrageous as to invoke a state's interest in protecting its citizens, pre-emption did not apply. Because the court did not want to go too far, however, it added a caveat in order to protect the federal labor relations scheme from interference:

> [W]e reiterate that concurrent state-court jurisdiction cannot be permitted where there is a realistic threat of interference with the federal regulatory scheme.... [S]omething more is required before concurrent state-court jurisdiction will be permitted. Simply stated, it is essential that the state tort be either unrelated to [a violation of the collective bargaining agreement] or a function of the particularly abusive manner in which the [violation] is accomplished or threatened rather than a function of the actual or threatened [violation] itself.

*Id.* at 305, 97 S.Ct. at 1066 (footnote omitted).[1]

■ Under these standards, it is clear that Fisher's intentional infliction of emotional distress claim is in fact a federal claim. His allegations of harassment, of being unfairly singled out for termination, and of being the victim of an unfair grievance process all relate to the question of whether he was fairly discharged in the first place. A discharge is fair if done in compliance with the terms of the collective bargaining agreement. Thus resolution of Fisher's intentional infliction claim neces-

---

**1.** Although this court is deciding the jurisdictional and pre-emption issues together, such analysis does not offend the Seventh Circuit's ruling in *Lingle v. Norge Division of Magic Chefs, Inc.,* 823 F.2d 1031 (7th Cir.1987) (jurisdictional and pre-emption issues to be decided sequentially). Fisher's claims arise under federal law, and thus removal is proper, only if the

claims are "completely pre-empted." *Caterpillar, Inc. v. Williams, supra.* In such circumstances, the "arising under" and pre-emption issues are the same. *Id.; Williams v. Hitachi Zosen Clearing, Inc.,* 1987 U.S. Dist. LEXIS 8654, 3 n. 4 (N.D.Ill.) [Available on WESTLAW, 1987 WL 14095].

sarily implicates the CBA and impinges on federal labor law. *See Choate v. Louisville and Nashville Railroad Company,* 715 F.2d 369 (7th Cir.1983); *Beers v. Southern Pacific Transportation Company,* 703 F.2d 425 (9th Cir.1983). The Seventh Circuit recently noted that intentional infliction claims which arise out of a discharge are "invariably" pre-empted. *Lancaster v. Norfolk and Western Railway Company,* 773 F.2d 807, 815 (7th Cir.1985).

Fisher's assault and battery allegations must be dealt with in the same way. While it might initially appear that an assault and battery claim has little to do with a collective bargaining agreement, the facts of this case reveal quite the opposite. Because Fisher was discharged for insubordination, one of the hotly contested issues in this case is how Hertrich treated Fisher when he requested him to remove the yellow ribbon. If Hertrich grabbed Fisher threateningly, as Fisher suggests, then perhaps Fisher would have been justified in refusing to follow Hertrich's order. On the other hand, if Hertrich touched Fisher lightly on the arm the way people often do, it appears more likely that Fisher was behaving in a disrespectful and insubordinate manner. Resolving the merits of Fisher's tort claims would embroil this court in debating the propriety of Fisher's dismissal. This we clearly may not do, as wrongful discharge suits are also routinely pre-empted under the Railway Labor Act. *Lancaster, supra.*

The *Farmer* pre-emption exception does not save Fisher's tort claims. As stated earlier, the *Farmer* doctrine applies only when the alleged tort either is unrelated to a violation of the CBA or is so abusive as to be outrageous. Neither condition is present here. Moreover, the Seventh Circuit recently applied the *Farmer* exception in very different circumstances in the *Lancaster* case. In *Lancaster,* the plaintiff was not discharged; he left his job voluntarily. He alleged, and the jury apparently found, that plaintiff's supervisors had threatened and struck him on numerous occasions, causing severe emotional injury. Judge Posner reasoned that the CBA was not implicated, and hence the *Farmer* exception applied, because "[t]he employment context [was] wholly incidental." *Id.* at 816.

Neither the employment context nor the CBA is incidental in this case. The interaction between Fisher and Hertrich occurred solely because of their employment relation, and implicated two provisions of the CBA—one on insubordination, and one on wearing pins or emblems. Unlike *Lancaster,* a labor dispute is in the forefront of this case. Not only do the alleged acts give rise to a grievance under the CBA, but Fisher even implies in his complaint that Hertrich's actions resulted from residual frustration over the pilots' strike. Labor relations concerns thus permeate this lawsuit, making pre-emption of Fisher's tort claims appropriate.

This court now turns its attention to the last count of the complaint, which alleges a violation of Fisher's free speech rights under the Illinois constitution. The pre-emption analysis with respect to this claim must be slightly different, for many of the authorities cited thus far dealt solely with state tort actions.

Because neither party has cited, nor this court found, a case pre-empting a constitutional claim, this court is reluctant to do so here. Moreover, if defendants did in fact violate the Illinois constitution, such action would constitute particularly abusive conduct under the *Farmer* exception. Count III of Fisher's complaint therefore is not pre-empted. This court refuses to remand the claim, however, because it can be joined by means of pendent jurisdiction to Counts I and II.

## CONCLUSION

Fisher's motion to remand is denied.