**Glenwood P. ROANE, Jr., et al., Plaintiffs,**

v.

**COMAIR, INC., et al., Defendants.**

**Civ. A. No. 88–182.**

United States District Court,
E.D. Kentucky,
Covington Division.

March 1, 1989.

Garry L. Edmondson, Edmondson, Condit & Calvert, Covington, Ky., for plaintiffs.

Richard L. Creighton, Jr. and Jerome C. Randolph, Cincinnati, Ohio, Peter J. Summe, Covington, Ky., for defendants.

## OPINION AND ORDER

BERTELSMAN, District Judge.

This action against Comair, Inc., a commuter airline, and certain of its officers and employees requires the court to resolve an important issue of "pendent party" federal jurisdiction. The claim of the plaintiff pilot who had the only federal cause of action has been dismissed. The claims of the other plaintiffs, who are flight attendants, are based on state law. Nevertheless, the court holds that it retains pendent party jurisdiction because of the significant federal policy questions that are involved in the case.

### FACTS

Briefly, the complaint in this action, filed in the Circuit Court of Boone County, Kentucky, and later removed to this court, alleges the following facts.

On September 15, 1988, Captain Roane, a Comair pilot, and flight attendants Snow, Bragg, McCormick and Hertzel, were induced by a stratagem of their employer to come to a hotel near the Greater Cincinnati International Airport, which is located in Northern Kentucky.

Upon arrival at the hotel, Plaintiffs were informed that a surprise drug test was being conducted. They were allegedly "held" alone or in groups with other pilots and attendants in locked and guarded rooms, informed that they were not allowed to leave or use the telephone on penalty of termination from employment, and ultimately directed to produce urine samples for drug urinalysis and to submit to searches of their luggage as well as to questioning. Some were "held" up to six hours in the rooms. No drugs were found and all tested negative for drug use.

The complaint claims both compensatory and punitive damages. It asserts the following state causes of action: (1) false imprisonment in that plaintiffs were detained at the hotel for an unreasonable period of time; (2) intentional infliction of severe emotional distress; (3) assault; (4) invasion of privacy and trespass to chattels; (5) defamation by way of statements made by Comair officials both at the hotel and later; (6) intentional interference with present and prospective employment, business relationships and economic advantage in connection with alleged publication of the defamatory statements made by Comair officials; and (7) wrongful termination of employment.

Subsequently, the entire action was removed to this court by the defendants on the ground that the pilot, Roane, was a party to a labor agreement and that all of his claims were federally preempted.

The court upheld the removal against a motion to remand, and further sustained a motion of the defendants to dismiss the pilot's claim, inasmuch as it was totally preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 153 (extended to air carriers by § 181) and exclusive jurisdiction of said claim lay in a system Board of Adjustment as provided for in the mandatory provisions of the collective bargaining agreement to which Roane was subject. *Miller v. Norfolk and Western Ry. Co.*, 834 F.2d 556, 561 (6th Cir.1987); *Delta Airlines, Inc. v. Airline Pilots Ass'n, Int'l*, 861 F.2d 665 (11th Cir.1988); *Fisher v. Hertrick*, 680 F.Supp. 1250 (N.D.Ill.1988); *Gregory v. Burlington Northern Ry. Co.*, 638 F.Supp. 538 (D.Minn.1986); *Majors v. U.S. Air, Inc.*, 525 F.Supp. 853 (D.Mo. 1981).

Following the dismissal of the pilot's claim, the plaintiffs moved to have the remainder of the case remanded to the Boone Circuit Court on the ground that the flight attendants were not participants in the labor agreement and that, the pilot's claim having been dismissed, only state claims remained in the action. The defendants

objected to the remand, arguing that important federal policy considerations justified the court's retaining jurisdiction of the plaintiffs' state law claims. Principally, the defendants argued that they intended to assert as an affirmative defense to the state law claims preemption—in whole or in part, expressly or implicitly—by federal regulations, which require the airline to assure that its crews are not under the influence of drugs or alcohol when they fly.[1]

## ANALYSIS

This court is thus presented with a delicate issue of what has been called "pendent party" jurisdiction.

When the instant action was removed, the court had jurisdiction of the entire case inasmuch as all of the claims of all the parties derived from a common nucleus of operative fact.

1. This case was filed in the Boone Circuit Court on September 16, 1988. At the time, the Federal Aviation Act, 49 U.S.C.App. § 1421(a) provided in pertinent part:
   "(a) [M]inimum standards; rules and regulations.
   The Secretary of Transportation is empowered and it shall be his duty to promote safety of flight of civil aircraft in air commerce by prescribing and revising from time to time:
        *    *    *    *    *    *
   "(5) reasonable rules and regulations governing, in the interest of safety, the maximum hours or periods of service of airmen, and other employees, of air carriers; and
   "(6) such reasonable rules and regulations, or minimum standards governing other *practices, methods and procedure, as the Secretary of Transportation may find necessary to provide adequately for national security and safety in air commerce.*" (emphasis added).
   Section 1421(b) provided, in part:
   "In prescribing standards, rules and regulations ... the Secretary of Transportation shall give full consideration to the duty resting upon air carriers to perform their services with the highest possible degree of safety in the public interest ... *The Secretary of Transportation shall exercise and perform his powers and duties under this chapter in such manner as will best tend to reduce or eliminate the possibility of, or recurrence of, accidents in air transportation ...*" (emphasis added).
   14 C.F.R. § 91.11 was also in effect at the time of the incidents complained of. This section provides in pertinent part:

The law is now settled that when a federal district court has jurisdiction over a substantial federal claim, the court also has discretion to exercise pendent jurisdiction over any associated state claims arising out of the same common nucleus of operative fact, and over any additional parties asserting them. *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988); *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Wright, Miller & Cooper, *Federal Practice and Procedure* § 3567.2.

It is also clear that the general rule in such a situation requires that, when the federal claim is dismissed at an early stage of the litigation leaving only the state claims, the district court should ordinarily exercise its discretion to remand the state claims. *Carnegie–Mellon*, 108 S.Ct. at 619 n. 7. However, that rule, while "usually" applicable is not "a mandatory rule to be applied inflexibly in all cases." *Id.; Rosa-*

"(a) [N]o person may act or attempt to act as a crewmember of a civil aircraft—
        *    *    *    *    *    *
   "(3) while using any drug that affects the person's faculties in any way contrary to safety ...
        *    *    *    *    *    *
   "(d) whenever the Administrator has a reasonable basis to believe that a person may have violated paragraph (a)(3) of this section, that person shall, upon request by the Administrator, *furnish the Administrator, or authorize any* clinic, hospital, doctor, or *other person to release to the Administrator, the results of each test taken* within 4 hours after acting or attempting to act as a crewmember that indicates the presence of any drugs in the body." (emphasis added).
   14 C.F.R. § 1.1 makes it clear that flight attendants, as well as pilots, are "crewmembers" within the meaning of the regulations.
   14 C.F.R. § 457 issued effective December 21, 1988, three months after this action was filed, is even more specific, *requiring* drug testing of crew members based upon reasonable suspicion and *requiring random testing without any suspicion.*
   *See also Delta Airlines, Inc. v. Airline Pilot's Ass'n Int'l,* 861 F.2d 665 (11th Cir.1988) (emphasizing the preemptive effect of federal aviation safety requirements even over rights under collective bargaining agreements as well as the national policy concerns at stake).

*do v. Wyman,* 397 U.S. 397, 403–405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

In certain situations, where important issues of federal policy are at stake, the trial court must exercise its informed discretion in determining whether or not to dismiss or remand pendent state claims.

> "There may, on the other hand, be situations in which the state claim *is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong. In the present case, for example, the allowable scope of the state claim implicates the federal doctrine of preemption;* while the interrelationship does not create statutory federal question jurisdiction ... *its existence is relevant to the exercise of discretion.*"

*Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139 (emphasis added).

In *Rosado, supra,* the Supreme Court again raised the "federal policy" consideration, along with considerations of judicial economy, as appropriate justification for the retention of jurisdiction over residual pendent claims by a federal court. In *Rosado,* the federal claim had been dismissed as moot, leaving only state claims to be tried. The Court said:

> "[T]he District Court correctly considered mootness a factor affecting its discretion, not its power, and *balanced the policy considerations* that have spawned the doctrine of pendency and the countervailing policy of federalism: the extent of the investment of judicial energy and the character of the claim. Not only had there been hearings and argument prior to dismissal of the constitutional claim, *but the statutory question is so essentially one of federal policy that the argument for exercise of pendent jurisdiction is particularly strong.*"

*Rosado,* 397 U.S. at 403–404, 90 S.Ct. at 1213. (emphasis added).

In *Rosado,* a New York statute which had reduced certain payments to AFDC prompted an equal protection claim as well as state claims by the plaintiffs. After an amendment to the state law rendered the federal claim moot, the federal judge nevertheless retained jurisdiction and issued an injunction against the state prohibiting it from reducing or discontinuing the state welfare grants concerned. *Id.* at 400, 90 S.Ct. at 1211.

By contrast, in the more recent case of *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), no question of preemption or federal policy issue that was properly before the Court was involved. Although the plaintiffs had originally raised federal age discrimination claims along with state claims of breach of contract, wrongful discharge, misrepresentation, intentional infliction of emotional distress and defamation against the employer, the federal claim was later voluntarily withdrawn by the plaintiffs as insubstantial. This left a situation in which no "substantial" federal claim was then, *or had ever been,* in issue. This prompted the Court to observe that "[w]hen a single federal law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction." 108 S.Ct. at 619. *See Quality Foods de Centro America S.A. v. Latin American Agribusiness Development Corp., S.A.* 711 F.2d 989 (11th Cir.1983) (dismissed party never properly in federal court in the first place). The *Carnegie Mellon* Court, however, reaffirmed that remand was discretionary and not mandatory. 108 S.Ct. at 622. *See also Fisher v. Hertrich,* 680 F.Supp. 1250, 1253 (N.D.Ill.1988).

A recent decision of the Second Circuit reaffirms that "one factor that may sometimes favor retaining pendent jurisdiction is when a state claim is closely tied to questions of federal policy and where the federal doctrine of preemption may be implicated." *Baylis v. Marriott Corp.,* 843 F.2d 658, 665 (2d Cir.1988).[2]

The current state of the law was accurately summarized by the United States

---

**2.** It is true that the Sixth Circuit has stated that it "has moved away from the position that the court has discretion to retain jurisdiction over a pendent state claim where the federal claim has been dismissed before trial." *Service, Hospital, Nursing Home and Public Employees Union v.*

Court of Appeals for the Seventh Circuit in *Zepik v. Tidewater Midwest, Inc.*, 856 F.2d 936, 945 (7th Cir.1988), as follows:

"*Gibbs* indicated in dictum that district judges' discretion was constrained by a general rule that 'if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.' This rule, however, *has given way to an extension of the Gibbs' discretionary standard* for determining whether pendent jurisdiction should be exercised when the federal claim survives pretrial motions. *See Rosado v. Wyman*, 397 U.S. 397, 404–05, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970); *United States v. Zima*, 766 F.2d 1153, 1158 (7th Cir. 1985)."

## CONCLUSION

Applying these criteria to the case at bar, the court in the exercise of its discretion holds that strong federal policy considerations are involved in this case sufficient to justify retaining jurisdiction of the state claims.

No greater problem faces our nation than the insidious cancer of drugs. They taint every aspect of our national life. They pervade not only the street corners but our offices, factories, and transportation systems.

No greater issue of employer-employee relations exists in this nation than how to deal with drugs in the workplace. A national policy is required to deal with the problem. It is essential that this policy be uniform and uniformly applied. This is particularly true as to the rights and duties of airlines, railroads and truck lines which operate across state lines and which are responsible for the safety of millions. In recent years, there have been several reports of train wrecks and airplane crashes that official agencies have found to have been caused, at least in part, by the use of drugs by those to whom the public safety has been entrusted. It is essential that the rights of such employers to compel drug

and alcohol testing, and the competing privacy interests of the employees, be clearly defined.

The defendants here raise not only these general policy considerations, but also the effect of specific federal regulations, some enacted before the events described in the complaint and some afterwards. This case will require *some* court to determine the effect of these federal regulations as against the common law state claims raised by the plaintiffs. That court should be a federal court because federal policy considerations are implicated and the public must be assured that due consideration is being given to public safety factors as well as individual rights. It is clear that the federal policies affected are of compelling importance.

Therefore, the court holds that the thrust of the federal public policy considerations overcomes the presumption that the state claims involved here should be remanded to the state court now that the federal claim has been dismissed.

The motion of plaintiffs to remand will be overruled and a discovery deadline will be set by separate order.

*Commercial Property Services*, 755 F.2d 499, 506 n. 9 (6th Cir.1985). However, the context of the opinion makes it clear that the court did not intend to address cases involving federal policy

considerations such as the case at bar. The same is true of *Miller v. Norfolk and Western R. Co.*, 834 F.2d 556 (6th Cir.1987).